House v. Ewen.

JACOB HOUSE et al., executors,

v.

JONATHAN H. EWEN et al.

1. On a bill by executors for the construction of a will, and for directions, the court will not adjudicate upon the nature of the estate of the devisees under the will, where the executors, as such, have no interest in the question; and so also, of course, as to the question whether a tenant for life may, without committing waste, convert part of the woodland on his devised premises into arable land.

2. A gift " to E. H., the interest of $3,000 her lifetime, and after her death to her son, J. H., his lifetime," and " to J. H. the interest of $2,000 his lifetime," gives to each of them the interest only for life, although no disposition is made of the principal after their deaths.

3. A testator gave legacies, amounting in the aggregate to $12,000, to all his grandchildren, some contingent and some vested, and then provided that all his " railroad stock, bank stock and government bonds be kept at interest, and dividends be paid to my living grandchildren *until all my grandchildren's legacies be paid*, then the dividend of stock and interest of bonds be equally

House v. Ewen.

divided" between his four children, naming them. There was no residuary clause. The specified stocks and bonds amounted to $43,000, and the other personalty to $58,000.—*Held,* that the executors were to retain the specified stocks and bonds, and appropriate the income therefrom to paying the grandchildren's legacies until they had all been paid in full; that, thereafter, the four named children were entitled absolutely to the principal of those stocks and bonds; and that testator had died intestate as to so much of the $58,000 as was not needed to pay his other legacies, debts &c.

Bill for construction of will, and directions to executors. On final hearing on pleadings and proofs.

*Mr. C. H. Sinnickson,* for complainants.

The Chancellor.

This suit is brought to obtain a construction of the will of Jonathan House, deceased, late of the county of Salem, and for directions to his executors. By the will the testator made the following devises:

"I give to my daughter, Mary H. Ewen, the farm of one hundred acres, with fifty acres of woodland lying both sides of the Friesburg road, her lifetime, with the brick house in Allowaystown, her lifetime; and after her death the farm of one hundred acres to my grandson, Jonathan H. Ewen, and to my grandson, Warren Ewen, the brick house in Allowaystown, with fifty acres of woodland lying both sides of the road to Friesburg. If Jonathan H. Ewen and Warren Ewen die without heir, the property to be sold and divided among my grandchildren.

"I give to my daughter, Ann White, the mortgage I hold on the house where she lives, in Bridgeton, in fee, with one hundred and ninety acres of woodland, bought of Hazlehurst, with the farm-house in Allowaystown, where J. P. Reeves lives, her lifetime, and after her death to be sold and equally divided between my grandchildren.

"I give to my son, Jonathan House, the farm of one hundred and two acres, with fifty acres of woodland joining the pond meadow, his lifetime, and at his death the farm goes to his son, George House, and fifty acres to his daughter, Fanny House. If George and Fanny die without heir, to be divided between my living grandchildren."

He also made the following bequests:

"I give to my son's widow, Elizabeth House, the interest of $3,000 her lifetime, and after her death to her son his lifetime.

24

"I give to my grandson, John House, his lifetime, the interest of $2,000, his lifetime; the interest to be paid half yearly by my executors to Elizabeth House and John House.

"I give to my grandson, Jonathan H. Ewen, $2,000 in fee simple.

"I give to my grandson, Warren Ewen, $2,000 in fee simple.

"I give to my grandson, Oakford House, $2,000, with forty acres of woodland bought of J. Ayers.

"I give to Harry House $2,000, with the Melic lot of woodland of twenty-three acres.

"I give to my grandson, George House, $2,000, at the age of twenty-one years.

"I give to my granddaughter, Mary White, $1,000."

He then gave to three others of his granddaughters $1,000 apiece at the age of twenty-one years, and after other legacies, provided as follows:

"I do order that my railroad stock, bank stock and government bonds be kept at interest, and the interest and the dividend to be paid to my living grandchildren until all my grandchildren's legacies be paid; then the dividend of stock and interest of bonds be equally divided between Mary H. Ewen, Ann White, Jacob House, Jonathan House."

The last-mentioned persons were and are all of the testator's living children. The grandchildren to whom legacies are given are all of his grandchildren. The will contains no residuary clause; it makes no disposition of the residue, nor of any part of the testator's personal estate undisposed of by the will, nor of the legacies which may lapse. The railroad stock, bank stock and government bonds mentioned in the above-quoted provision, amount to $43,380, and the testator's other personal property amounts to $58,331.51.

The executors are the testator's children, his two sons and two daughters. By the bill they ask for the construction of the will on the following points:

What is the nature of the estate given to Jonathan H. and Warren Ewen by the above devise of real estate to them in remainder?

If under the provisions of that devise it should become necessary to sell, are the executors charged with that duty? And are

House v. Ewen.

they charged with the duty of selling, under the devise to Ann White?

Of the farm of one hundred and two acres given to Jonathan House for life, only about thirty acres are cleared land; the rest is woodland. Is the property to remain in its present condition, so far as the wood and timber on it are concerned, for the life of the life tenant, or may he cut off the wood and timber to clear the land and complete the conversion of it from woodland to farm land? What is the nature of the estate of George and Fanny House under that devise?

What are the rights of John House under the bequests of the interest to him and his mother, Elizabeth House, and what are the duties of the executors in regard to those bequests, and to whom is the interest, thereby bequeathed, payable?

When are the several legacies to the grandchildren due and payable, and out of what fund are they payable, and do any of them bear interest, and if so, from what time?

Are the interest and dividends mentioned in the above and last-quoted provision the fund out of which the several legacies to the grandchildren are to be paid; and if so, in what order are those legacies to be paid out of it, and what disposition is to be made of the interest and dividends after payment of the legacies out of them, and until the youngest of the grandchildren reaches majority?

Or, are the grandchildren entitled to the interest and dividends, in addition to their legacies, up to the time when the youngest shall become of age?

What is the meaning of the words "living grandchildren" in that section?

What disposition is to be made of the railroad and bank stocks and government bonds after the payment of the legacies?

What disposition is to be made of the other personal estate of the testator not disposed of by the will?

Two of the questions relate to the nature of the estates of Jonathan H. and Warren Ewen, and George and Fanny House, under the devises to them in remainder. It is not necessary to answer them, for it would not be proper to decide them in this

suit, which is brought by the executors for a construction of the will, and for directions to aid them in managing and administering the trust in their hands under the will. The executors, as such, have no interest in those questions unless the duty of selling the properties in the contingencies on which they are to go over from the devisees in remainder to the other grandchildren, devolves on them. But it does not. No power of sale is given to them, and they are not charged by the will with the duty of dividing the proceeds of the sale. Nor are those proceeds blended with the personal estate. The duty of sale and division does not devolve on them under the will. *Seeger* v. *Seeger, 6 C. E. Gr. 90 ; Lippincott* v. *Lippincott, 4 C. E. Gr. 121 ; Geroe* v. *Winter, 1 Hal. Ch. 655 ; Drayton* v. *Drayton, 2 Dessaus. 250, n. ; Perry on Trusts § 501.* What has been said on this subject is, of course, applicable to the provision for sale in the devise to Ann White.

The question whether Jonathan House, under the devise to him for life of " the farm of one hundred and two acres," may cut off the wood and timber to " clear " the property and make farming land of that which is now woodland, is also one in which the executors, as such, have not and cannot have any interest. It is a question which may arise between the life tenant and those in remainder—a question of waste; but it cannot concern the executors as such. It would not be proper to decide it in this suit. The case of *Benham* v. *Hendrickson, 5 Stew. Eq. 441,* cited as authority for the request for construction on this head, differs from this. There, there was uncertainty as to the extent of a devise, whether it covered land which the executor was about to sell under a power of sale given to him by the will.

To answer the question as to the rights of John House under the bequests of interest to him and his mother for life, and the duties of the executors in respect to those gifts : The will gives to " Elizabeth House the interest of $3,000 her lifetime, and after her death to her son [John House] his lifetime." It then gives to " John House the interest of $2,000 his lifetime," and adds, " the interest to be paid half yearly to Elizabeth House and John House." The construction of these gifts presents no diffi-

culty. The bequests are of the interest of funds, and are expressly limited to the lifetime of each taker. The general rule is that when the interest or produce of a legacy is given to, or in trust for a legatee, or for the separate use of such legatee, without limitation as to continuance, the principal will be considered as bequeathed. But, notwithstanding, as a general rule the gift of interest and dividends, standing by itself, is a gift of the *corpus*, yet if from the nature of the subject, or the context of the will, it appear that the produce or interest of the fund only was intended for the legatee, the gift of the interest will not pass the principal. *2 Rop. on Leg. 1476, 1848.* In this case it will have been seen that the gift to each Mrs. House and her son is of the interest for life only. The gift to her is of the interest of a fund for her life, and after her death the interest is to go to her son for his life. The next following bequest is a gift of interest to him —of the interest of another fund; but this also is only for life. That the testator intended to limit the legatees to the interest of the funds, and did not mean that John should have the principal, is further evidenced by the fact that in the very next two bequests, which are of sums of money, he adds the words " in fee simple," meaning thereby absolutely, and to distinguish them from the bequests to John and his mother. Though he does not make any disposition of the principal of the funds whereof the interest is given to Elizabeth and John House, that is true also as to a very large part of his personal estate. It is the duty of the executors to invest the sums mentioned in the bequests under consideration, and pay the interest thereof to the legatees, according to the directions of the will—to Elizabeth the interest of $3,000 for life, and after her death the interest of that fund to John for life, and to pay him the interest of the $2,000 for his life. The direction in the will, "the interest to be paid half-yearly by my executors to Elizabeth House and John House," was evidently inserted merely to provide that the payment of the interest to each of these legatees should be by semi-annual and not annual payments.

The next question is as to when the legacies to the grand-

children are payable, out of what fund, and whether any of them bear interest, and if so, from what time?

The answer to these questions involves also a consideration of the next, as to the intention of the testator in the direction that his " railroad stock, bank stock and government bonds be kept at interest, and the interest and the dividend to be paid to his living grandchildren until all his grandchildren's legacies be paid." Some of the legacies to grandchildren are absolute and some of them conditional. The latter are those which are contingent on the legatee's attaining to the age of twenty-one years. They are given to the legatee " at the age of twenty-one years," the time being annexed to the gift itself. They are, therefore, not vested, but contingent. *1 Rop. on Leg. 566, 567; Hawk. on Wills 226; Gifford v. Thorn, 1 Stock. 702.* The vested legacies bear interest from the end of one year from the death of the testator, there being nothing in the will to take them out of the general rule on that subject. The contingent legacies will lapse in case of the death of the legatees before arriving at the age of twenty-one years.

The fund out of which the legacies to the grandchildren are to be paid is the dividends of the railroad and bank stocks and the interest of the government bonds. The testator directs the executors to continue these investments and pay the income to his " living grandchildren " until all the legacies to his grandchildren be paid, and then to pay it to his children. There is no evidence that he intended this direction to pay the income to his grandchildren as a provision by way of cumulative legacy to them. He does not give or bequeath the income to them, but merely directs his executors to pay it to them until their legacies be paid. He does not direct that it be divided between them, but that it be paid to them until their legacies be paid, and then the payment is to cease. It seems to me quite clear that he intended by this direction to provide a means of paying the legacies to them without diminishing the principal of his personal estate, which he intended should go to his children. Some of the legatees were of age when he died, but others were not; one of the latter was only ten years of age. It is not probable that

House v. Ewen.

he intended, by the language under consideration, to give to his grandchildren the income of his investments in railroad and bank stocks and government bonds (about $2,400 a year) until his youngest grandchild should have attained to his or her majority. It is not probable that he intended to give the income immediately to grandchildren whose legacies he had made contingent on their attaining to majority. Unless he intended by this direction to provide a means for paying the legacies out of the income of these investments, he has not provided that they shall be paid out of them (either out of the income or *corpus*) at all, for he gives the income, after the legacies of the grandchildren shall have been paid, to his children. Therefore, to allow the claim that the grandchildren are entitled to the income, in addition to their legacies, until the time when the last of the legacies to them shall have been paid, would necessitate a construction that the legacies are not to be paid out of those investments but out of the other personal estate, which is ample for the purpose, and that the grandchildren are to have the income of the investments in question, in addition to their legacies, up to the time when the youngest of them shall attain to majority. There is no evidence of such an intention on the part of the testator, but on the contrary, as before stated, it seems clear that what he intended was to provide a ready means of paying the legacies to his grandchildren without diminution of the principal of his estate. Nor has the language necessarily any other signification. The direction is to pay the income to the grandchildren until their legacies be paid; that is, to pay it to them until they shall have received out of it the amounts of their legacies. The words "until all my grandchildren's legacies be paid" signify not only the time when the payments are to cease, but also the amount of the payments—the measure and limit of the participation of the grandchildren in the income.

In *Creveling* v. *Jones, 1 Zab. 573,* where the testator gave legacies of $400 each to two granddaughters, and directed that if they should not be of age at his death, his executors should pay each of them, yearly and every year, the interest of $400 until they attained to majority, and then further ordered

House v. Ewen.

his executors to pay out of his estate to one of them $400 in one year, and to the other $400 in two years after his death, in full of their legacies, it was held that he intended to give the legatees only $400 each, with interest until their majority, and stress was laid in the decision on the fact that there, as is the case here, the provision on which the claim that the latter provision was an additional legacy was based, was not a gift or bequest in terms, but merely a direction to pay.

The executors should pay out of the income of the investments in railroad and bank stocks and government bonds, the legacies to the grandchildren. Those that are vested should be paid, ratably, out of the income, and out of the income the executors should retain a sum sufficient to pay the contingent legacies, when and as they may become vested. In case of lapse of any of those legacies, the amount of them will, so far as the fund (the stocks and government bonds) out of the income of which they are to be paid is concerned, go to the testator's children, to whom he gives the income after the legacies of the grandchildren shall have been paid. The gift to the children is an unlimited one of the income after (or subject to) the payment of the legacies. By that gift, the *corpus* of the investments passes to the donees. *Gulick* v. *Gulick, 10 C. E. Gr. 324; S. C. on appeal, 12 C. E. Gr. 498.*

By the words "living grandchildren" in the clause now under consideration, the testator probably meant grandchildren whose legacies had not lapsed by their death; intending, thus, to confine the payments to those who were or might be entitled to' legacies. The will is unskillfully drawn, and the sense in which these words "living grandchildren" are used in each of the two clauses in which they are found, is to be gathered from the context of those sections respectively.

The testator must be held to have died intestate of so much of his personal estate other than his railroad and bank stocks and government bonds as is not needed for the payment of his debts and legacies and the expense of settling the estate. And this is true of any legacies which may lapse. The executors

will hold such personal estate in trust for the next of kin of the
testator, to whom it will go according to the statute of dis-
tributions.