# Kellerman's Estate.    Crowley's Appeal.

*Res adjudicata—Orphans' Court—Decedents' estates—Construction of will on partial distribution.*

1. A particular construction of a will on a partial distribution by an auditing judge of the Orphans' Court to which no exceptions were filed, and from which no appeal was taken, is not res adjudicata so as to bind the Orphans' Court on the subsequent adjudication of an account covering another portion of the same estate.

*Trusts and trustees—Purpose of trust—Separate use trust—Preservation of remainders—Rule in Shelley's Case.*

2. Testator gave a portion of his estate to trustees to keep the same invested and to pay over the income thereof to his granddaughter, a married woman, "for and during all the term of her natural life for her sole and separate use, and from and immediately after her decease then in trust to and for the only proper use and behoof of all and every the child and children which she may leave surviving her, and the lawful issue of any of them who may be then deceased having left such issue, their several and respective heirs, executors and assigns in equal shares forever per stirpes, and not per capita." The will was subsequently republished by a codicil. It appeared that the granddaughter's husband died subsequent to the making of the will, but the date of his death in reference to the date of the republication of the will was not established. *Held*, (1) the date of the husband's death being left unascertained by testimony, it will not be assumed on appeal that his death occurred subsequent to the republication; and (2) that the words "child and children which she may leave surviving her, and the lawful issue of them who may be then deceased" are words of purchase and not limitation, and that the trust continued until the death of the granddaughter.

Argued May 6, 1913. Appeal, No. 115, Jan. T., 1913, by Bertha Crowley, from decree of Superior Court, Oct. T., 1912, No. 144, affirming decree of O. C. Philadelphia

4   KELLERMAN'S ESTATE. CROWLEY'S APPEAL.

[242 Pa.
Co., April T., 1911, No. 356, dismissing exceptions to
adjudication in Estate of Caroline Kellerman, deceased.
Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCH-
ZISKER, JJ.   Affirmed.

Appeal from Superior Court.   See Kellerman's Es-
tate, 52 Pa. Superior Ct. 412.

The following opinion was filed by RICE, P. J.:

The fund embraced in the account and distribution
under review in this appeal consisted principally of the
proceeds of the sale of realty made by the executors
under a power contained in the will.   The clause of the
will which gives rise to the dispute reads as follows:
"One other fourth part of my estate I give, bequeath and
devise to my executors in trust for the following uses,
and purposes that is, to keep the same invested and to
pay over the income thereof to my granddaughter,
Bertha Crowley, wife of John C. Crowley, for and dur-
ing all the term of her natural life for her sole and
separate use, and from and immediately after her de-
cease then in trust to and for the only proper use and
behoof of all and every the child and children which she
may leave surviving her, and the lawful issue of any of
them who may be then deceased having left such issue,
their several and respective heirs, executors, adminis-
trators and assigns, in equal shares forever per stirpes
and not per capita."   This appeal is from the decree of
the Orphans' Court dismissing the exceptions to the
adjudication of the executors' second account and
awarding one-twelfth of the fund then for distribution
to the executors in trust for Bertha Crowley, the appel-
lant, instead of awarding it to her absolutely, as she
claimed should be done.

If the proper construction of the clause above quoted,
and the question whether the trust ended with the death
of the appellant's husband, were open questions upon
the adjudication of that account, they were in our judg-
ment correctly decided by the Orphans' Court, for the

reasons given and upon the authorities cited in the opinions of the auditing judge and of the court in banc. But it is claimed that they were not open questions, because upon the adjudication of a former account, which related wholly to personalty, the auditing judge, by an opinion filed, decided both of them adversely to the executors' claim and awarded one-twelfth of the fund then for distribution to Bertha Crowley, the appellant. As no exceptions were filed to that adjudication nisi, it was confirmed absolutely under the rules of court. The contention is that the construction then placed on the will became the "law of the case," which, whether right or wrong, precluded the court from construing it differently in distributing the fund embraced in any subsequent account. In support of this contention the learned counsel for the appellant cites Rahm's Est., 226 Pa. 594, 233 Pa. 602, and Lafferty's Est., 209 Pa. 44, 230 Pa. 496.

Rahm's Estate is a rather complicated case, but, as we understand the decisions in the two appeals, they do not relate to the conclusiveness of a decree distributing one fund, upon a subsequent distribution of another fund arising in the same estate, but relate only to the conclusiveness of a final decree disposing of a fund in a particular way, in a subsequent controversy between the same parties, involving the same fund. This appears by the following excerpts from Justice MESTREZAT'S opinion in 233 Pa. 602: "It will be observed that the fund which is the subject of this account was held by the appellant company as trustee under and by virtue of the decree of the Orphans' Court of June 6, 1908, by which the company was directed to pay the income to Louisa Rahm, during her life, and at her death to Hopkins' administrator. The present appellant, as we have heretofore seen, appealed from that decree to this court, but subsequently discontinued the appeal, and the question of the disposition of the fund is therefore res adjudicata.

The appellant company had its day in court and an opportunity to assert its right to the fund........

"The appeal, however, was discontinued, the appellant thereby submitting to the decree of the Orphans' Court as the final and proper disposition of the fund, the possession of which is now in controversy." Lafferty's Estate is more nearly like the present case, and, in view of earlier as well as later cases, we deem it important to call attention, in some detail, to its distinguishing features. It appears by the report of the first appeal (209 Pa. 44), that a testator created a trust estate which was not to terminate until his youngest grandchild, living at the date of his last surviving child, should arrive at full age. He gave to each of his children power to appoint "to and among his or her children or issue in such shares, proportions and estates absolutely or upon trusts, as he or she may so will or appoint." Francis, one of his sons, died leaving his estate to his three children absolutely. Rose E. Carr, a daughter of Francis, subsequently died leaving a will by which she directed certain annuities to be paid by her executor and gave the residue to her children. At the time of her death the trust created by her grandfather's will had not expired. The income from the trust estate, which passed to Rose E. Carr under her father's will, was directed by the auditing judge to be paid to the guardian of her children. But, on exceptions to his adjudication, the court, in an opinion filed, held that it should be awarded to her executor, and, on appeal to the Supreme Court, the decree modifying the adjudication accordingly was affirmed. Subsequently, on the adjudication of another account, the court awarded the income then for distribution to the minor children of Rose E. Carr; but, on appeal (230 Pa. 496), the Supreme Court reversed the decree and awarded the fund to the executor or trustee under her will. Speaking of the decision in the first appeal, Justice POTTER said: "That decision necessarily involved the determination of the

question whether or not the will of Francis Lafferty was
a valid exercise of the power of appointment given to
him in the will of his father. After the lapse of some
six years, precisely the same question, in the same es-
tates, under the same wills, is again presented by the
decree from which the present appeal is taken. The de-
cision in Lafferty's Estate, 209 Pa. 44, became the law of
the case and stands as such." The difference between
that case and the present is substantial. There the con-
struction of the will, which was held to be the "law of
the case," and therefore controlling in subsequent dis-
tributions under the same will turning on the same
question, was the construction which the Supreme
Court had placed upon it in a contested proceeding in
which the question was brought fully before them for
final determination. Here, the claim is, that the con-
struction of a will adopted by an auditing judge, in dis-
tributing the fund embraced in a partial account, be-
comes the "law of the case" when the distribution is
confirmed by the Orphans' Court, and must control in
all subsequent distributions of other funds of the same
estate; and this, too, though the first distribution was
confirmed because no exceptions were filed to it. This
would be carrying the doctrine as to res adjudicata and
as to the "law of the case" far beyond what was decided
in Lafferty's Estate, and would be in conflict with many
other authoritative decisions, rendered both before and
since, upon the precise point upon which the case before
us turns. Thus, in Guenther's App., 4 W. N. C. 41, the
distribution of the testator's estate depended on the
construction of his will and of section 2, of the Act of
May 6, 1844, P. L. 564. At the audit of the first account
a niece claimed her mother's share, the auditor allowed
her claim and no exceptions were filed to his report. In
an adjudication of a second account, which involved pre-
cisely the same legal question, the auditing judge held
that she was not entitled to any part of the fund for
distribution. The Orphans' Court dismissed her ex-

ceptions and confirmed the adjudication, and, upon appeal, the Supreme Court affirmed the decree, saying.: "The prior decree of the Orphans' Court was conclusive only as to the fund then distributed." Again, in Kline's App., 86 Pa. 363, it appeared that an auditor was appointed to distribute the fund embraced in the first account of the executors, before whom the appellant appeared and claimed to participate as a residuary legatee. The auditor's report, that he was not a residuary legatee and disallowing his claim, was confirmed by the Orphans' Court. On the audit of the final account of the executors he again claimed a share as a residuary legatee, first, in the fund embraced in the former account, and, second, in the fund for distribution on the final account. The auditor and the Orphans' Court disallowed both claims, but, on appeal, the Supreme Court held that, upon a proper construction of the will and codicils, he was a residuary legatee and therefore, so far as he was excluded as such from a share in the fund not included in the first distribution, there was error. Speaking of the first decree, Justice MERCUR said that it must be held to be conclusive "as to the fund distributed," but not conclusive "as to every question considered," and that Guenther's Appeal ruled the case. The same general question arose in Reilly's Est., 190 Pa. 509, and was decided in the same way upon the authority of the two cases above cited. Again, in Lease v. Ensminger, 5 Pa. Superior Ct. 329, it was held, upon application of the principle of Guenther's Appeal, that the finding of an auditor, confirmed by the Orphans' Court, excluding a husband from participation in the personal estate of his wife, by reason of neglect to support his wife, was conclusive only as to the fund then distributed, and did not operate as res judicata to preclude the husband from having that question determined by a jury in an action of ejectment for the purpose of determining his right to the real estate as tenant by the curtesy. In Raeder's App., 167 Pa. 597, the principle for which Guenther's

Appeal and Kline's Appeal stand, was applied upon the authority of those cases; and the principle has been impliedly recognized in the analogous cases relating to the correction of inequality of distribution on a partial account, by a subsequent distribution of other funds of the same estate. See Townsend's App., 106 Pa. 268, 274; Grim's App., 109 Pa. 391, 397, 147 Pa. 190; Yetter's Est., 160 Pa. 506, and Stahl's Est., 25 Pa. Superior Ct. 402. In the last cited case our Brother PORTER said: "The decree of the court upon the first account was, as to the residuary legatees, conclusive only as to the fund then distributed; and did not determine that all subsequent distributions must be made upon the same theory." In Reed's Est., 237 Pa. 125, decided in July last, Justice ELKIN reviewed some of these last cited cases and said: "There is nothing new or novel in the principle underlying these cases. It is just, reasonable and equitable. It is predicated upon the theory that in the distribution of a partial account the rights of distributees are not finally adjudicated."

In his opinion overruling the exceptions to the adjudication in the present case, Judge GEST, speaking for the Orphans' Court, said, "It frequently happens that questions of law are imperfectly presented to the auditing judge and decided without proper argument, or the facts of the case are not fully developed, and where no exceptions are filed, either because counsel themselves do not realize the importance of the decision, or the amount involved does not warrant the expense of litigation, or for some other sufficient reason, it would be a serious matter to hold that an error of law once committed could never be corrected in the future distribution of another and distinct fund, but remains unchangeable like the law of the Medes and Persians." We are of opinion that such a rule was not declared in Lafferty's Estate, and is not deducible from what was decided, and that the present case is ruled, so far as this question is concerned, by Guenther's Ap-

peal and the cases that follow in its lead.  No refer-
ence was made in Lafferty's Estate to any of this latter
class of cases or to the principle controlling them, and
there is no such conflict between them and that decision
as would justify us in assuming that the Supreme Court
intended to overrule them.

The decree is affirmed at the costs of the appellant.

*Error assigned* was the decree of the Superior Court.

*G. Von Phul Jones,* for appellant.

*J. F. Jenkinson,* for appellee.

OPINION BY MR. JUSTICE STEWART, June 27, 1913:

Caroline Kellerman by her last will directed that her
residuary estate be divided into three equal parts, and
that one of these parts be subdivided into four shares.
As to one of these four shares she directed as follows:

"One other fourth part . . . . . . I give, bequeath and de-
vise to my executors in trust for the following uses and
purposes, that is, to keep the same invested and to pay
over the income thereof to my granddaughter, Bertha
Crowley, wife of John C. Crowley, for and during all the
term of her natural life for her sole and separate use,
and from and immediately after her decease then in
trust to and for the only proper use and behoof of all
and every the child and children which she may leave
surviving her, and the lawful issue of any of them who
may be then deceased having left such issue, their sev-
eral and respective heirs, executors, administrators and
assigns, in equal shares forever, per stirpes and not per
capita."

Bertha Crowley's husband is deceased, and by the ad-
judication distributing the balance on the executors'
first account one-twelfth of the fund, derived entirely
from personalty, was awarded Bertha Crowley, upon
the theory that the separate use trust had become inef-

fective, and the remainder, being in effect given to the
heirs of her body, by analogy the rule in Shelley's Case
applied. In the adjudication distributing the balance
on the executors' second account, the court as then con-
stituted taking a different view of the law, denied Mrs.
Crowley direct participation in the fund, and awarded
the one-twelfth that she would have received, had the
former ruling been observed, to the executors in trust
under the will. It is now urged in her behalf that by
the former adjudication her legal status under the will
was established once for all; that the adjudication
operated as an estoppel to further inquiry in that re-
gard; and, second, that independent of this, the trust
failed in consequence of the death of Bertha Crowley's
husband prior to the death of the testatrix, and that
Bertha Crowley was, therefore, entitled to take abso-
lutely under the rule in Shelley's Case. In the opinion
filed by the learned president judge of the Superior
Court, in disposing of the first of these contentions, all
of our own cases bearing on the subject involved are so
fully and carefully reviewed and analyzed that further
reference to them here is unnecessary. It is enough to
say in this connection that not one of our cases gives
support to the position taken by the appellant. A few
words, supplementing the opinion of the learned presi-
dent judge, as to the limitation to be observed in apply-
ing the rule of res adjudicata in cases of this kind, is
all that we deem necessary to add. A decree of distri-
bution following the adjudication of a partial account is
a final decree, and the matter determined in that pro-
ceeding cannot again be drawn into controversy as be-
tween the parties and privies to the decision in a dis-
tribution upon a subsequent account; but, by "matters
determined" is to be understood such facts and circum-
stances, found or presumed, which fix and determine the
rule of law applicable to the case. The questions of fact
which are made the subject of dispute in the earlier ad-
judication and which were there determined, may not

again be made the subject of controversy between the parties on the second distribution; the parties to the dispute having had their day in court, and these questions having once been determined by legal method of inquiry, the findings with respect to them must be allowed the same conclusiveness as a verdict of a jury in a common law action.  But the rule of estoppel does not extend to the law which was applied in the earlier distribution to the facts there ascertained when it comes to the second distribution.  Though the decree in the first may have rested on a mistaken application of a rule of law—a circumstance which can only be inquired into on appeal—so long as the decree stands it is conclusive with respects to all rights in the fund distributed; but it cannot be made the basis of an estoppel when another distinct fund is to be distributed though it be part of the same estate.  The law applied in the first distribution if inapplicable, is not the law of the case; the duty of the auditing judge in distributing on a second amount is to distribute according to law, just as this is the duty of a judge in the first distribution; and in discharging this duty he must be free to disregard a decision of his own, or that of another, upon the same bench, which as he is better informed he would reject. The following extract from the opinion of Chief Justice McKean, in Kerlin v. Bull, 1 Dall. 175, is here apposite:

"A court is not bound to give the like judgment which had been given by a former court, unless they are of opinion that the first judgment was according to law; for any court may err; and if a judge concedes that a judgment given by a former court is erroneous, he ought not in conscience to give the like judgment, he being sworn to judge according to law.  Acting otherwise would have this consequence; because one man had been wronged by a judicial determination, therefore every man, having a like cause, ought to be wronged also."

In Shindel's App., 57 Pa. 43, this court held in express terms that while a decree distributing the balance

on a partial account is final and conclusive as to what was therein contained, it is not final and conclusive as to what was reserved for a second accounting. The plain logic of this is that the distributions are wholly distinct and separate, each having its own subject matter, and are to be treated as though they were two separate actions at law between the same parties, and such questions of fact as had been passed upon in the earlier are not open to dispute in the later. Estoppel does not extend beyond this. In the very recent case of Bower's Est.—Stephan's App., 240 Pa. 388, this same question was fully considered, and our conclusion here accords with the view there expressed.

The second question raised is a more serious one, but a careful examination of the argument advanced in support of appellant's contention leaves us unconvinced that error was committed in disposing of it. The statement of the question by the appellant is open to the criticism that it assumes something as a fact for which there is no warrant. It is thus stated: "Does the rule in Shelley's Case apply to a devise where a separate use trust for life is created for the benefit of a married daughter, whose husband dies after the making of the will, with remainder over to those who correspond in description with the lineal heirs of the life tenant? And does the separate use trust end on the death of the husband, and the life estate merge with the remainder, giving the daughter a fee?"

It does appear that the husband died after 23d May, 1901, the date when the original will was made in which the trust was created. But by codicil dated 10 July, 1909, testatrix in express terms ratified and confirmed the will of 23d May, 1901, which was in effect a republication of the will. Was the husband living when this codicil was executed? The fact with respect to this seems to have been carefully avoided in the evidence. If, at that time the husband was dead, the conclusion would seem unavoidable that the trust was not for the

protection against coverture.  Are we to assume that his death occurred subsequent?  Why should we make such assumption when the effort is to have us reverse the action of the court below?  If any assumption is to be made it is to be with respect to facts which make for the support of the action of the court rather than its defeat.  Clearly it was the business of the appellant in the endeavor to strike down the trust to develop the facts on which an intelligent conclusion could rest.  We will make no adverse assumption in this case; and, therefore, since the fact referred to is left unascertained, a categorical answer to the question submitted would not help in the determination of the case.  The question then is reduced to this—the death of the husband of Bertha Crowley not being a factor—is there anything in the will indicating a purpose in the testatrix, in connection with the trust created, which will support and call for its enforcement?  The adjudicating judge in his opinion filed thus states his conclusion:

"On the merits of the contention, the auditing judge is of opinion that the words 'child and children which she may leave surviving her and the lawful issue of them who may then be deceased' are words of purchase and not of limitation; that, although one of the purposes of the trust has ceased by the death of Bertha Crowley's husband, the other has not, that is, the preservation and conservation of the corpus for the benefit of those entitled in remainder.  Until the death of the equitable life tenant, it cannot be determined who will compose the class, consisting of surviving children and the issue of those then deceased."

In this conclusion we agree.  The appeal is dismissed.