PAYSON STONE DOUGLASS and KENNETH B. GORDON, as trustees under the last will and testament of Levi P. Stone, deceased, et al., complainants,

*v.*

BOARD OF FOREIGN MISSIONS OF THE PRESBYTERIAN CHURCH IN THE UNITED STATES OF AMERICA et al., defendants.

[Decided April 14th, 1932.]

*Messrs. Whiting & Moore,* for the complainants.

*Mr. William S. Gnichtel (Mr. Tompkins McIlvaine,* of the New York bar, of counsel), for the defendants Board of Home Missions of the Presbyterian Church in the United States of America and Board of Foreign Missions of the Presbyterian Church in the United States of America.

*Mr. Huston Dixon,* for the defendants the trustees of the Theological Seminary of the Presbyterian Church, and the trustees of the Orange Orphans Society.

CHURCH, V. C.

This is a bill for the construction of the will of the late Levi P. Stone. The clause in dispute is the tenth, which reads as follows:

"Tenth: Upon the death of either of my said daughters not having been married, the one equal one-third part of the residue of my estate

hereinbefore devised and bequeathed in trust for her shall be divided into six equal parts and be distributed as follows: One part to the Trustees of the Board of Foreign Missions of the Presbyterian Church in the United States of America; one part to the Trustees of the Board of Home Missions of the Presbyterian Church in the United States of America; one part to the Trustees of the Theological Seminary of the Presbyterian Church located at Princeton, New Jersey, as a permanent fund, the income of which is appropriated to the use of that Seminary as the Trustees and Directors thereof may think most beneficial; one part to the Trustees of the Orange Orphan Society, to be held as a permanent fund, the income of which is to be appropriated to the use of that Society. And I hereby authorize and empower my said daughters to dispose of the remaining two of the said six parts in such manner as my said daughters may, by any last Will by her duly executed, direct and appoint."

The testator left two daughters who both married. One, Mrs. Douglass, died, leaving two children. Her share, therefore, went to her children under the twelfth clause of the will, as is conceded by all counsel in their briefs. The other daughter, Mrs. Whittemore, died childless, her husband having predeceased her. The controversy is as to the meaning of the phrase "upon the death of either of my said daughters not having been married." If these words mean never having at any time gone through a marriage ceremony, the result is an intestacy as to the one equal third part of the residue of the estate bequeathed under the tenth clause of the will. This the law abhors. The first case I find, supporting this principle, is *Leigh v. Ex'rs of Savidge, 14 N. J. Eq. 124,* in which Chancellor Green said (at *p. 134*):

"The natural and reasonable presumption is, that when a will is executed the testator designs to dispose of his entire estate, and does not intend to die intestate as to any part of his property."

In *Yawger's Ex'r v. Yawger, 37 N. J. Eq. 216,* Vice-Chancellor Bird said (at *p. 218*):

"Now the law prefers a construction which will prevent a partial intestacy," citing *Vernon v. Vernon, 53 N. Y. 351.*

In *Carter v. Gray, 58 N. J. Eq. 411* (at *p. 416*), Vice-Chancellor Grey held as follows:

"When the question presented requires the construction of a residuary clause, the courts have a strong disposition so

to interpret it as to prevent an intestacy with regard to any part of the testator's property. *Leake* v. *Robinson, 2 Mer. \*386.* 'It must always be remembered,' says Sir Richard Pepper Arden, master of the rolls, in *Phillips* v. *Chamberlaine, 4 Ves. \*59,* 'that when the residue is given, every presumption is to be made that the testator did not intend to die intestate,' and in *Warner* v. *Willard, 54 Conn. 470,* where there was a devise of the real estate in terms for life to the wife, and also a gift of 'all the residue of my estate of whatever name or kind' to her, the residuary gift was held to have passed to the wife a fee in the real estate."

It should be noted that the case before me involves the disposition of a *residuary* estate. In *Kelly* v. *Owen, 74 U. S. 496,* Mr. Justice Field said:

"The terms 'married,' or 'who shall be married,' do not refer, in our judgment, to the time when the ceremony of marriage is celebrated, but to a state of marriage."

In *Den* v. *Crawford, 8 N. J. Law \*90,* Chief-Justice Ewing, speaking for the supreme court, held:

"It is only when a reasonable construction and the discovery of the intent of the testator are utterly hopeless, that all effect should be denied to a will."

In *Goetter* v. *Berth, 99 N. J. Eq. 625* (at *p. 626*), I held:

"The presumption is that the testator intended to dispose of his entire estate and not to die intestate as to the whole or any part thereof," quoting *40 Cyc. 1409,* which cites cases from the United States courts and from the following states: Arkansas, California, Connecticut, District of Columbia, Georgia, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Missouri, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Tennessee, West Virginia, Wisconsin.

The last New Jersey case I have found is that of *Baldwin* v. *Baldwin, 107 N. J. Eq. 91,* in which Vice-Chancellor Fallon says:

"A will ought not to be construed so as to produce intestacy. The natural and reasonable presumption is, that when a will is executed the testatrix designs to dispose of her entire

estate and does not intend to die intestate as to any part of her property."

Is there then a construction which will sustain the will and avoid an intestacy? From a reading of the will as a whole, it becomes apparent that the testator was much interested in the charities of the Presbyterian church. In the third clause he bequeaths $10,000 each to the foreign and home missionary boards of that organization. In the tenth clause he again mentions them and the Presbyterian Theological Seminary at Princeton, and also in the eleventh clause. It is clear to me that he intended to keep the bequests to his two daughters distinct and separate, to provide in each instance for the care of their husbands and children if they left any surviving them, and if not, in each instance to bequeath the daughter's share to the charities above mentioned. The tenth clause leaves, in case either of the daughters dies "not having been married," four parts to the charities and two parts to be disposed of by her will. The eleventh, in case the daughter dies leaving a husband and no children, leaves one-sixth to her husband, three-sixths to the charities and two-sixths to be disposed of by her will. The twelfth, in case the daughter dies leaving a child or children, or descendants, leaves it all to them. This is a complete scheme for the disposition of the whole if it be held that "not having been married" means not having been married at the time of her death. The contention that testator would naturally prefer to charity his grandchildren by one daughter, if his other daughter died childless, having once been married but surviving her husband, is a very forced application of the theory that a man usually remembers those of his own blood to the exclusion of eleemosynary institutions. It is not borne out by the will itself. By the tenth clause, if a daughter had never at any time married at her death charity would get four-sixths of her residue to the exclusion of her nieces and nephews, and the rest she could dispose of as she pleased. By the eleventh clause, if she died leaving a husband only, the husband would get one-sixth, charity three-sixths, and the other two-sixths she could will as she saw fit. So it appears

that in two contingencies testator clearly stated that his daughters, nephews and nieces should get nothing except two-sixths if their aunt should see fit to bequeath it to them. There is ample authority for holding that "not having been married" can be construed as meaning not having been married at the time of death.

*Webster's New International Dictionary (1923)*: "married * * * (a) being in the state of matrimony; wedded; as, a married man or woman * * *."

*Funk & Wagnall's New Standard Dictionary (1929)*: "married * * * 1. Pertaining to marriage; connubial; conjugal; as, the married state. 2. Having a spouse; united by or as by matrimony; wedded; as, a married man * * *."

*Oxford (New) English Dictionary (1908)*: "Married * * * 1. United to another in wedlock; living in the matrimonial state * * *."

*Pope, Legal Definitions (1920)*: "Married. A man who has a wife, or a woman who has a husband, is married. One without a husband or wife is not married—is single. *Dunham* v. *Dunham, 162 Ill. 608.*"

*29 American & English Encyclopedia of Law, p. 347:* "Unmarried. The term 'unmarried' frequently occurs in deeds of trust and wills, and has been the subject of judicial construction. Its primary meaning is, never having been married, but the term is of flexible meaning and 'slight circumstances, no doubt, will be sufficient to give the word its other meaning' of 'not having a husband or wife at the time in question.' "

*Bouvier's Law Dictionary (Rawle's 3d ed. 1914)*: "Unmarried. Its primary meaning is 'never having been married;' but it is a word of flexible meaning and it may be construed as not having a husband or wife at the time in question. *9 H. L. C. 601.* A divorced woman has been held an unmarried woman. *In re Giles, 158 Fed. Rep. 596; 85 C. C. A. 418.*"

In *Peters* v. *Balke, 170 Ill. 304,* the court said, by Judge Magruder (at *p. 312*):

"In *Clarke* v. *Colls, 9 H. L. 601,* Lord Cranworth said that

the word 'unmarried' may, without any violence to language mean either 'without ever having been married' or 'not having a husband living at her death' and, in that case it was held that unmarried is a word of flexible meaning to be construed with reference to the plain intention of the instrument where it is used and that, as used in the settlement there it meant 'being without a husband at the time of the death.' The same meaning was given to the word in *In re Saunders' Trust, L. R. 1 Eq. Cas. 675.* See, also, *Pratt v. Matthews, 22 Beav. 328; Mitchell v. Colls, 29 L. J. Ch. 403; Day v. Barnard, 30 L. J. Ch. 220.*"

See, also, *Conway's Estate, 181 Pa. 156.* In this case the court held: "A devise to 'my spinster or unmarried nieces' includes those nieces who at testator's death were widows as well as those who had never married."

*In the Matter of Kaufman, 131 N. Y. 620,* the court held that a widow is an "unmarried woman" within the meaning of Revised Statutes 3 tit. 1 c 6, providing that "a will executed by an unmarried woman shall be deemed revoked by her subsequent marriage." *61 Hun 331,* affirmed.

The definition of a married woman given in *38 Corp. Jur. 1363,* is: "A woman who has a husband living and not divorced; a *feme covert.*"

In *In re Oakley, 74 N. Y. Supp. 206,* the court said:

"The appellants contend that the ordinary meaning of the word 'unmarried,' *i. e.,* never having been married, should be given, and our attention has been called to the case of *Dalrymple v. Hall, 16 Ch. Div. 717,* wherein it was held, as stated in the headnote, that, 'in the absence of context showing a contrary intention, the word 'unmarried' must be construed according to its ordinary or primary meaning, as 'never having been married,' and therefore the gift to the children of B. did not take effect, he being a widower.' That case, however, is equally an authority for holding that where the context does show a different intention the word 'unmarried' should not be defined as 'never having been married.' "

Defendants' counsel states in his brief that the complainant trustees have recognized "that the word married signi-

fies a status," because in 1914, while Mrs. Whittemore was still alive, they filed a bill for the construction of the will, the sixth paragraph of which sets forth that Mrs. Whittemore's husband had died and that she "is not now married." An opportunity was given complainants' counsel to file a reply brief which they did not do. I must, therefore, take this statement to be true. Therefore, it would appear that in 1914 at least the trustees recognized the force of the argument that "not having been married" as applied to Mrs. Whittemore in this will, meant not having been married after her husband's death and in her widowhood. Had the testator desired to indicate in the tenth clause a daughter who had at no time in her life gone through a marriage ceremony he could easily have so indicated by the change of one word by saying inst≈ of "not having been married," "never having been married."

I conclude that from the consideration of the whole will the testator meant not having been married at the time of her death. The context of the document justifies this and the authorities I have cited clearly uphold it. To hold as complainants contend would result in an intestacy, which, as I have said, the courts where possible always avoid. Especially is this so because the testator is dealing with *residue*. I cannot think he contemplated a disposition of the residue, and then intentionally failed to provide for a contingency which might easily occur. The interpretation I have given the will makes it a complete and workable document, avoids an intestacy, and, as I believe, carries out the wishes of the testator found therein when read in its entirety. Complainants say that testator added two codicils in which he "might have clarified the doubtful provisions." My answer to that is that the testator, as I view it, worked out a scheme for the disposition of the entire estate, which to his mind was perfectly clear and which is perfectly clear to my mind also.

I will advise a decree in accordance with the above conclusions.