PAYSON STONE DOUGLASS and KENNETH B. GORDON, as trustees under the last will and testament of Levi P. Stone, deceased, et al., complainants-respondents, and CAROL D. GORDON, complainant-appellant,

*v.*

BOARD OF FOREIGN MISSIONS OF THE PRESBYTERIAN CHURCH IN THE UNITED STATES OF AMERICA et al., defendants-respondents.

[Submitted October term, 1932. Decided January 31st, 1933.]

*Messrs, Wall, Haight, Carey & Hartpence (Mr. Albert C. Wall)*, for the complainant-appellant.

*Messrs. Whiting & Moore*, for the complainants-appellants other than Carol D. Gordon.

*Mr. William S. Gnichtel (Mr. Waldron M. Ward and Mr. Tompkins McIlvaine)*, for the Board of Foreign Missions, &c.

*Mr. Huston Dixon*, for the trustees of the Theological Seminary, &c.

The opinion of the court was delivered by

BODINE, J.

The complainants filed a bill for the construction of the last will and testament of Levi P. Stone, of West Orange, New Jersey, who died December 31st, 1884. Both of his daughters married.

By the tenth clause of his will he provided, in part, as follows: "Upon the death of either of my said daughters not having been married, the one equal one-third part of the residue of my estate hereinbefore devised and bequeathed in trust for her shall be divided into six equal parts and be distributed as follows:" The charities mentioned assert that they take, even though both of the daughters died having been married.

The will is a lengthy one and provides for nearly every contingency which might happen, except the one that did happen. The testator had two daughters, Mrs. Douglass, the mother of the appellants, and Mrs. Whittimore, their aunt, who also made them, so far as she could, her beneficiaries. Mrs. Whittimore had no children or descendants, and at the time of her death was a widow.

It seems to us the reasons that prompted the testator to make the gift over, if either of his daughters died not having been married, are perfectly immaterial. He chose words having a perfectly clear and settled meaning and we cannot add or subtract from such expressions.

The court of chancery decided that Mrs. Whittimore died "not having been married," at her death. This was not so, and besides the words "at her death" are not in the will and cannot be gathered from the contents thereof. A widow never dies "not having been married" and no court with a regard for our common speech could so decide. The words "never having been married" are perfectly well understood, and it would seem to us that the synonymous words "not having been married" should have been equally well understood. Mrs. Whittimore appears, by admissions in the case, to have been wedded. This status of a married or wedded woman was changed by the death of her husband to this extent, that she became a widow. But that circumstance did not alter the fact that she had been married. The gift to the charities was only in the event that either daughter died *not having been married*. This did not happen, so they take nothing.

The children of Mrs. Douglass take the property because there was a partial intestacy in the estate left by their grandfather. They could take no more by the appointment of their aunt, if it were valid, which we think doubtful.

The decree below is reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Trenchard, Parker, Lloyd, Case, Bodine, Donges, Brogan, Heher, Kays, Hetfield, Wells, Kerney, JJ. 13.