[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 310 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 311 
In pursuance of leave granted at the foot of a decree entered in 1922 in the Court of Chancery, the plaintiff in its fiduciary capacity now seeks judicial guidance and instruction with respect to the final distribution of the corpus and income of a testamentary trust originated by the testatrix Frances C. Henderson by her will executed on May 29, 1896.
The testatrix died on January 25, 1897, and it is circumspect to catch a glimpse of her family affiliations at the time of the execution of the will and at her death.
Her immediate kindred were then two daughters. Fanny Von Preuschen, aged 53, was married to Clemens Von Preuschen. Three sons were born of this marriage whose ages ranged from 28 years to 32 years. No other children were ever born of the marriage. The other daughter, Julia B. Adams, was the widow of one Edward White Adams, with two living children, Julia H. Adams, 25 years of age, and J. Pinckney H. Adams, 18 years of age, both of whom were then unmarried. *Page 312 
It was amid such surroundings that the testatrix made the bequests expressed in paragraphs 3 and 5 (there is no paragraph four) of her will. I quote the relevant portions of those paragraphs:
"3. I bequeath to my brother James S. Cox and to the Pennsylvania Company for Insurances on Lives and Granting Annuities in trust for my daughter Fanny one half of all the property, real, personal and mixed, not already mentioned in this will which I may own at the time of my death.
"The interests and profits accruing from the same are to be paid to her regularly as long as she lives, and after her death, if she dies before her children or either of them has attained the age of thirty years (30 years), said interests and profits are to be used for the children.
"As soon as each one reaches the age of 30 his shares and of any accumulated interests and profits is to be paid over to his order.
"I leave to the direction of my said Trustees, to make before that time out of said invested or accruing interests any payments which they may consider necessary for either of said children for its establishment in life.
"Should either of the sons of my daughter Fanny die before the age of thirty (unmarried) his share is to be added to the portions of his brothers.
"5. I will and bequeath to my brother James S. Cox and the Pennsylvania Company for Insurances on Lives and Granting Annuities, in trust for my daughter Julia, the other half of all my property, real, personal or mixed not heretofore mentioned in this will which I may own at the time at the time of my death. The interests and profits accruing from the same are to be paid to her regularly as long as she lives, and if she dies before her children or either of them before either of them has attained the age of 30, the same are to be invested for the benefit of said children until each one has attained the age of thirty.
"As each child reaches the age of 30 (if my daughter Julia is already dead) his or her share of the accumulated interests as well as of the regular income from said moiety is to be paid to him or her regularly. Should either child die unmarried his or her share is to be added to the share of the sister or brother as the case may be.
"As respects the share falling to the daughter, it is not, in case she marries, to be subject to the control or interference of any husband or husbands she may take, and is to be forever free from any debts, charges or encumbrances of any such husband or any liability to his creditors and as respects the share of the son it is to be free, clear and discharged from the claim, demand or interference of any creditor which the said son may have atat time during his life.
"Should neither of the children of my daughter Julia leave children, then after her death and theirs, all the property herein left in trust *Page 313 
for her or them shall be placed in trust for my daughter Fanny or her children, and only the income paid over.
"I further empower and authorize my said trustee or the survivor thereof or any successor in the said trust, at any time my said trustee or trustees may deem it advisable to sell my real estate, or any portion thereof, in such manner, at public or private sale and either for cash or credit as may be deemed advisable, and to use the proceeds thereof by investing the same upon the trusts hereby declared and set out, and upon making such sale or sale I hereby authorize my said trustees or trustee to make, execute and deliver such deeds and other assurances in the law to the purchaser or purchasers thereof as may be necessary without any liability on the part of the purchaser to see to the application of the purchase money.
"And if a vacancy shall occur in the said trust by the death of my brother James S. Cox, then I appoint as trustee in his place Andrew A. Blair, the husband of my niece formerly Anna S. Biddle, of Philadelphia, now residing in Philadelphia.
"I leave my daughter Julia executrix of this will, and desire that she shall not be compelled to give any security as I know that she will also will faithfully carry out its provisions as far as in her lies."
Since the devolution of the property of one of the trusts is implicated in the present proceedings, the events which have ensued the death of the testatrix command attention.
Her two grandchildren Julia H. Adams and Pinckney Adams married. The former married Arthur H. Geissler and the latter married Florence Day. Julia B. Adams died testate in September, 1902, leaving her residuary estate to her two children, Julia H. and Pinckney, share and share alike. Julia H. Geissler died in 1925 childless and survived by her husband, Arthur Geissler. By the terms of her will, she bequeathed $4,000 to her brother, Pinckney, and $1,200 to her niece Florence Day Adams (daughter of Pinckney), both bequests payable out of her share in the testatrix' estate, the residuary bequeathed to her husband.
The then trustees (the Pennsylvania Company, etc., and Andrew A. Blair) filed their intermediate account in the Essex County Orphans' Court which was allowed by a decree of that court dated January 8, 1926, in which the trustees were allowed their commissions on income, but not on corpus. The trustees petitioned that court for a decree of distribution of certain income in their hands, and the court by its decree dated February 4, 1927, ordered the income paid to Pinckney *Page 314 
Adams which the trustees continued to do until his death. I may pause here to say that the defense of res judicata stems from this decree.
Prior to the filing of the original bill in this cause, Pinckney Adams and his wife were divorced. Three daughters had been born of that marriage, of whom one died in 1905 unmarried. The other daughters were Florence Day Adams, who married Carl Christian von Munthe Av Morgenstierne, and Elizabeth McCall Adams, now married to Palmer L. Clarkson. Pinckney Adams died on October 30, 1946, survived by his two daughters to whom he bequeathed in equal shares any interest he had under his grandmother's will. One G. Forrest Butterworth was named executor.
Florence Morgenstierne died testate on December 26, 1946, a resident of Norway, also naming Butterworth as executor. He is a party defendant to these proceedings as executor of the estates of Pinckney Adams and Florence Morgenstierne, and the United States Trust Company as testamentary trustee under the will of Florence is also a party defendant.
Arthur H. Geissler died testate in 1945 leaving his residuary estate to his brother, John M., and his sister, Alma E. Geissler, naming them as executors. They are both alive and are parties defendant.
The three sons of Fanny Von Preuschen are all dead, having died testate, residents of Salzburg, Austria. Their wills have been duly probated there but not here, with the result that the Chancellor appointed an administrator ad prosequendum to represent the estates of said three sons of Fanny.
By the decree of the Court of Chancery dated September 5, 1922, the trustees were directed to pay the one-half of the corpus
embraced by paragraph three of the testatrix' will, to Fanny's children in equal shares, and it was then determined that the prayers for instructions relating to the disposition in paragraph five were not yet timely and opportune.
The present proceeding implicates the construction of paragraph 5 of the testatrix' will, and the identity of the ultimate beneficiaries of the trust property disposed of by its terms. Counsel have been most diligent in submitting for the consideration *Page 315 
of the court a variety of divergent and oppugnant interpretations, and a plenitude of legal authorities in support of them. These have been studied painstakingly and provide the bases of the decision to follow.
Initially it should be observed that Julia B. Adams was the recipient of a life estate in the trust assets embraced in paragraph 5. Upon her death, and as each child (Pinckney and Julia) reaches the age of 30, there is a bequest of accumulated interest and income to him or her regularly.
The operation of the well established rule is invoked that "The bequest of income without limit as to time, or gift over which can operate, is a bequest of principal, if there be no expression of a contrary intent * * *. The same rule applies whether the gift be direct or through the intervention of a trustee."Passman v. Guarantee Trust and Safe-Deposit Co., 57 N.J. Eq. 273, 41 A. 953, and the cases cited in Duane v. Stevens,137 N.J. Eq. 329, 335, 44 A.2d 716. Other citations are: Craftv. Snook's Ex'rs, 13 N.J. Eq. 121; House v. Ewen,37 N.J. Eq. 368; Bishop v. McClelland's Ex'rs, 44 N.J. Eq. 450, 16 A. 1; Traphagen v. Levy, 45 N.J. Eq. 448, 18 A. 222;Lippincott v. Pancoast, 47 N.J. Eq. 21, 20 A. 36; Jenningsv. Reed, 75 N.J. Eq. 530, 72 A. 939; 174 A.L.R. 319, (n).
Thus we are faced with two inquiries: (1) Has testatrix here made provision over for a gift which can operate? (2) Does the will contain an expression of a contrary intent? An affirmative answer to either query would operate to deny the applicability of the stated rule.
A consideration of the relevant passages is in order. "Should either child die unmarried his or her share is to be added to the share of the sister or brother as the case may be." Whether the gift over to Pinckney became operative upon his sister Julia's death depends upon the meaning to be ascribed to the word "unmarried." The primary meaning of that word is "never having been married." Black's Law Dictionary (3d ed.) 1785; 66C.J. 51; see Douglass v. Board of Foreign Missions, etc.,110 N.J. Eq. 331, 335, 160 A. 37; reversed, 112 N.J. Eq. 361,164 A. 489. So that upon Julia's *Page 316 
death survived by Pinckney, the status quo ante remained unaffected. Nor does the incidence of Pinckney's divorced status at the time of his death alter the matter. Frankly, I am unable to find any ingredient in the context of the will which would justify this court in departing from the primary meaning of the word "unmarried."
"Should neither of the children of my daughter Julia leave children, then after her death and theirs, all the property herein left in trust for her or them shall be placed in trust for my daughter Fannie or her children, and only the income paid over." It is manifest that the contingency upon which the limited gift over was predicated did not occur since Pinckney did leave children surviving him.
There remains yet for consideration the restrictive expressions to be found in paragraph 5. "As respects the share falling to the daughter, it is not, in case she marries, to be subject to the control or interference of any husband or husbands she may take, and is to be forever free from any debts, charges or encumbrances of any such husband or any liability to his creditors and as respects the share of the son it is to be free, clear and discharged from the claim, demand or interference of any creditor which the said son may have at at during his life." It is evident that the testamentary object of this provision was the preservation of the trust fund from which the contingent gift of income to Fanny or her children was to be had. The determination in Gulick v. Gulick's Ex'rs, 27 N.J. Eq. 498, is an accredited pattern for this view. See, also, 174 A.L.R. 346 etseq.
From the foregoing it appears that neither inquiry is to be answered in the affirmative, as a result of which the invocation of the accepted general rule of construction is entirely warranted by the terms of the will. But, it is contended that this avenue of interpretation is foreclosed by the decree of the Essex County Orphans' Court, on an intermediate accounting by the trustees, to which reference has heretofore been made, which adjudged that upon Julia Geissler's death, her share of the income be paid to her brother Pinckney, and that consequently Julia had no further interest in the fund, which *Page 317 
would devolve to the present claimants in her chain of inheritance. A few preliminary facts should be noted. The only issue determined by the decree of the Orphans' Court is the identity of the beneficiary entitled to Julia's share of the income after her death, viz., Pinckney. Then again, the court in its opinion says: "the only question which must now be disposed of being the disposition of a sub (sic) share of the income arising out of the Julia Adams share." Additionally, the construction touching upon the corpus was premature at that time since it could not then be known whether Pinckney would die leaving children.
The learned judge in his opinion construes the words "die unmarried" to mean "without children," thus resulting in the decree awarding all of the income to Pinckney. If that determination is binding on this court with respect to the trust fund embraced in paragraph 5, it clearly destroys the basis of the general rule aforesaid. But is it?
The principal authority in support of the view against the decree being res judicata is the decision in In re Kellerman'sEstate, 242 Pa. 3, 88 A. 865. It is that opinion from which the text of 69 C.J., "Wills," § 2053, is drawn: "In accordance with principles already considered, a decree making partial distribution of the funds of an estate is — so long as it stands — conclusive with respect to all rights in the fund distributed; but it is conclusive only as to those funds distributed, and the decree cannot be made the basis of an estoppel when another distinct fund is to be distributed, although it be part of the same estate, and although precisely the same legal questions are involved. The duty of the auditing judge in distributing on a second amount is to distribute according to law, just as this is the duty of a judge in the first distribution; and in discharging this duty he must be free to disregard a decision of his own, or that of another, on the same bench, which, as he is better informed, he would reject." There is a divergence of judicial reflection on this subject. Cf. 136 A.L.R. 1180.
While the answer to this question is not free from doubt, I feel constrained, in the circumstances here exhibited, *Page 318 
to adopt as promotive of a more circumspect standard of justice the rule enunciated by the Pennsylvania courts. This course of reasoning is effective to enable the court to conclude that Julia and Pinckney inherited the trust fund in question.
On this basis, Julia's interest passed by the terms of her will to her husband, Arthur Geissler, subject to the two bequests, $4,000 to Pinckney and $1,200 to Pinckney's daughter, Florence Day Adams. Arthur Geissler having died testate in 1945, his share enures to his brother, John M., and his sister, Alma E. Geissler. Pinckney's bequest ($4,000) was by his will disposed of in favor of his two daughters, in equal shares. One-half thereof goes to the defendant Elizabeth Adams Clarkson; the other to the testamentary fiduciary of his other daughter (now deceased), Florence.
Pinckney's interest under parrgraph 5 would devolve in the line indicated in the concluding sentence of the preceding paragraph.