# Yates's Estate.

*Trusts and trustees—Life estate—Remaindermen—Principal and income.*

1. Where a trust provides that the income from it shall be paid to one distributee for life, and the principal and remainder to another, ordinarily all the income that accrued during the life estate must be paid to the life tenant, or his personal representatives, even though not collected or distributed during his lifetime.

2. A life tenant's right to such income, in the absence of very clear language to the contrary, cannot be made to depend on the action or inaction of the trustee.

*Parent and child—Adoption—Rights of adopted children—Not to take under gift by will to children of adopting parent—Act of June 7, 1917, P. L. 403.*

3. Although as between an adopted child and the adopting parent, the child will be given, under our statutes, the same rights in the parent's estate as he would have had had he been born of the latter, this does not make him an actual child of the adopting parent, and, ordinarily, he will not be entitled to take, under the will of a third party (who died before December 31, 1917), if it simply makes a gift to the child or children of such adopting parents.

4. The fact that the adopted child was spoken of by testator as the child of the adopting mother, does not alter the conclusion stated, even thought the adopting mother, at the time the will was

made, had no other children, and was of such an age as to render it probable there would never be any born to her.

5. This rule has been changed by section 16 (b) of the Wills Act of June 7, 1917, P. L. 403, 409, so far as relates to a testator dying on or after December 31, 1917, if the child was adopted before the will was made.

*Wills—Construction—Intention—Undisclosed purpose.*

6. While the court must put itself in a testator's place, in order to correctly decide what he meant by the language used in his will, it must, from that standpoint, determine only what was his expressed intention, and not seek for some other possible but undisclosed purpose.

Argued May 21, 1924. Appeals, Nos. 68 and 74, Jan. T., 1925, by Geo. W. Foulke and Effie R. Foulke, from decree of O. C. Phila. Co., Oct. T., 1901, No. 163, affirming and dismissing certain exceptions to adjudication, in estate of David G. Yates, deceased. Before WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Exceptions to adjudication of THOMPSON, J.

The opinion of the Supreme Court states the facts.

Exceptions sustained as to award of principal, in opinion by GEST, J., and dismissed as to award of income. See 4 D. & C. Rep. 569.

George W. Foulke and Effie R. Foulke appealed.

*Error assigned* was, in both appeals, inter alia, decree, quoting it.

*Daniel C. Donoughue,* for Effie R. Foulke.—The terms of the will giving the principal of the one-fourth share to the child or children of Helen M. Foulke would remain inoperative, and in fact be meaningless, unless the sense of the word "child" were extended beyond its natural import: Hallowell v. Phipps, 2 Wharton 276; Dickinson v. Lee, 4 Watts 82; Eichelberger's Est., 5 Pa. 264; Hunt's Est., 133 Pa. 260.

For the purpose of ascertaining, not defeating, testator's intent, evidence is admissible to prove the circumstances and conditions surrounding him at the time he made his will, in order that the will may be properly expounded: Postlewaite's App., 68 Pa. 477; Follweiler's App., 102 Pa. 581; Webb v. Hitchins, 105 Pa. 91; Hermann's Est., 220 Pa. 52; Adams v. Johnson, 227 Pa. 454; Shaffer's Est., 262 Pa. 15; Wood's Est., 267 Pa. 462; Brooklyn Tr. Co. v. Warrington, 277 Pa. 204.

Helen M. Foulke had a vested interest for life in all income. She could have compelled payment to her by the trustees of all income collected by them. Her executrix can enforce her right: Sheets's Est., 52 Pa. 257.

Neither the fact that the trustee has not paid over the income nor the fact that the trustee has not received the income, affects the life tenant's right to the net income "so long as she shall live": Wengerd's Est., 143 Pa. 615; Mullen's Est., 19 W. N. C. 320; McHugh's Est., 1 Pa. Dist. R. 154; Levy's Est., 153 Pa. 174; Pinkerton's Est., 193 Pa. 275.

*Harvey Gourley*, for Geo. W. Foulke.—The words "at and immediately" fixes the time of payment of "accrued income," viz, at Helen's death.

The words "accrued income" mean income on hand at Helen's death, not subsequently accruing income: Sheets's Est., 52 Pa. 257.

It was error to construe accrued income as meaning apportioned income: Gross v. Partenheimer, 159 Pa. 556.

Neither by the will nor testimony is it shown that the adopted child should share in testator's bounty: Puterbaugh's Est., 261 Pa. 235.

OPINION BY MR. JUSTICE SIMPSON, July 8, 1924:

Testator directed that his residuary estate should be divided into four parts; one he gave to his brother in fee, if surviving, or, if not, then to the brother's issue,

if any, and, in default thereof, to his (testator's) three sisters; the second and third shares he gave separately, each in trust for a sister for life, with remainder to her surviving child or children and the issue of any who might be deceased, and, in default of both, to testator's surviving brother and sisters in equal shares; finally, he directed his executors to hold the last fourth "in trust for the use and benefit of my sister, Helen M. Foulke, [they] to collect, receive and recover the rents, issues, income, dividends and profits accruing and to accrue thereon, and after the payment of all taxes, water rents, repairs and other charges, to pay the net income thereon unto my sister, Helen M. Foulke, so long as she shall live, without any power of anticipation or assignment by her, and at and immediately upon the death of my said sister, Helen M. Foulke, to pay, transfer and set over the principal of said share, together with any accrued income, to such child or children as my said sister, Helen M. Foulke, may leave her surviving, and the issue of any child or children who may be deceased, in equal shares, per stirpes, in fee. But if my said sister, Helen M. Foulke, should die without leaving any child or children, or the issue of any deceased child or children her surviving, then and in that case to pay, transfer and set over the principal and any accrued income of said share to and among my nephew, George W. Foulke, and my nieces, Margaret G. and Anna P. Foulke, the survivors or survivor of them, in equal shares in fee."

Helen, the life tenant, died without ever having had any children born to her; but leaving a girl, whom she, Helen, had adopted by a deed executed and recorded long before the date of testator's will. The testimony disclosed that the child lived with her adopting mother, was known to decedent, and spoken of by him, as the daughter of his sister Helen, and was so treated by him and the rest of the family. The evidence does not show, however, that testator ever said he had given or intended

to give to the adopted daughter any interest in his estate, and the will does not refer to her in any way.

Upon the death of the life tenant, the trustee filed his account. The auditing judge awarded the principal of the trust to the adopted daughter; but exceptions filed by the nephew and nieces were sustained by the court in banc, and the fund awarded to them. The adopted daughter thereupon took the second of the above appeals.

At the audit it also appeared that a corporation, some of whose stock belonged to the trust estate, had accumulated, during Helen's lifetime, a certain amount of income, nearly all of which had been distributed to the shareholders, including the trustee, before the date of her death; but the trustee had erroneously treated the fund as principal, and had not given it to her. A small part was paid to him after she died. It was admitted by both parties that the two sums should be treated alike, and by the nephew and nieces that ordinarily they would be payable to the estate of the life tenant. It was claimed by them, however, that, under the foregoing clause of the will, testator had ordered otherwise. This claim was overruled, and from the decree, which awarded the fund to the estate of the life tenant, the nephew prosecutes the first of the above appeals.

Considering this latter objection to the decree, we find that the nephew's contention is that, since the distribution to the remaindermen of "principal and any accrued income," was to be made "immediately upon the death" of the life tenant, the "accrued income" referred to could only mean that which had "accrued" before her death, but had not been distributed to her. This is ingenious but not sound. It makes the life tenant's right depend entirely on the action or inaction of others, or their mistakes or fraud. A testator could, of course, so provide; but he who asserts it has a heavy burden to carry. In the present instance it is not difficult to disprove the claim.

By the clause of the will under consideration, testator gave to his sister the "profits accruing and to accrue" on

the share of the estate to be held in trust for her. He does not limit his gift to the profits which shall be paid to or distributed by the trustee. When, then, he gives the principal and "accrued income" to the remainder-men, after the death of the life tenant, it is so highly improbable he meant to revoke the gift already made, that we naturally conclude his purpose was to bequeath, as is usual, only that which constitutes the estate in remainder; in a word, the remaindermen were to receive the estate as left by the testator, and no more, the profits earned by it during the life estate going to the life tenant: Waterman's Est., 279 Pa. 491, 495.

It is clear to us that the word "immediately," so much relied on by appellant, refers to the time of distribution, rather than to what shall pass at that time. The accounting of the trust was not to be delayed; the principal and "accrued income," converted or unconverted, was to be paid to the remaindermen "immediately." We have neither the right nor the inclination to add to the language giving the income "accruing and to accrue" to the life tenant, the words, "provided it is actually received and paid over to her during her lifetime," or anything of like tenor. We could quite as well add a similar qualification to the gift to appellant, for if "accrued," in one place, means both accrued and paid, no reason appears why it should not be given the same meaning when it is used for the second time; the law does not sanction such an addition in either event, however.

Turning now to the first of the above disputes, we may assume, for the purposes of this case, that, as between the life tenant and her adopted child, the latter acquired all the rights she would have had had she been born to the life tenant. She was not an actual child of her adopted mother, however; and, since the estate now being distributed never belonged to that mother, our real question is: Where there is a gift by a third party to one for life, with remainder to her child or children, does

the latter provision include an adopted child, in the absence of anything in the will to show testator so intended? Under the facts found, much might be said in favor of an affirmative answer, if the question was an open one; since it was settled to the contrary, however, section 16 (b) of the Wills Act of June 7, 1917, P. L. 403, 409, was passed to provide that, as to decedent's dying on and after December 31, 1917, an adopted child shall take, where, as here, it was adopted before the will was executed. In the present instance, testator died seven years before that date.

In Schafer v. Eneu, 54 Pa. 304, the gift, by will, was in trust for the sole and separate use of a married woman for life, with remainder to her children. It was held that an adopted child could not take. It is true, in that case the adoption took place after the death of testator, but the decision was placed squarely on the ground,—quoting and following Com. v. Nancrede, 32 Pa. 389,—that "giving an adopted son a right to inherit does not make him a son in fact, and he is so regarded in law, only to give the right to inherit" from his adopting parents. The same conclusion was reached in Freeman's Est. (No. 1), 40 Pa. Superior Ct. 31, where the life tenant was given a power of appointment "to such person or persons of kin" as he might select, "and in default of such appointment [the estate should go to his] child or children." It was held an adopted child could neither be appointed to take, nor allowed to do so under the clause last quoted. Edwards' App., 108 Pa. 283, 290, and Morgan v. Reel, 213 Pa. 81, 90, cite and approve the conclusion in Schafer v. Eneu, supra. To the same effect is Burnett's Est., 219 Pa. 599, where we held that an adopted child could not inherit from the collateral kindred of the adopting parents.

Puterbaugh's Est., 261 Pa. 235, greatly relied on by appellant, does not help her. True, it was there said that decedent, when he made his will, did not appear to have had any knowledge that his son might later adopt the

child who was claiming under the will; but this was simply stating an additional reason against the claim of the adopted child, and cannot be considered the same as saying that, if testator had known of the fact, the adopted child would have taken under his will, because of the gift in remainder to "child or children." On the contrary, Schafer v. Eneu, supra, is cited and approved in its statement to the contrary; and, as correctly stated in the syllabus, we again held that the word "children" "when it occurs in a will [should ordinarily be confined and limited] to its natural import, except where the testator has clearly shown by other words that he intended to use the term in a more extensive sense." Such other words do not appear here.

Of course, it is the intention of the testator which is to be carried into effect, and where the will shows it was his purpose that an adopted child should share under a general gift to children, it must be so construed; but it must so appear from the will itself, and not extrinsically, where the will is silent on the subject and is not doubtful in meaning: Line's Est., 221 Pa. 374. It is also true, as appellant further claims, that we must put ourselves in testator's place in order to determine what he meant by his will (Sheaffer's Est., 262 Pa. 15), but, when we have reached that coign of vantage, we must still declare the meaning of the language used, and not some other possible but undisclosed purpose: Ludwick's Est., 269 Pa. 365. Were this not so, verbal wills might become quite common, despite the requirement of the Wills Act.

Assuming that testator knew his sister was too old to have progeny, as appellant so strongly urges upon us, the contention that he must have meant the word "child" to refer to appellant, is still without weight; for the gift is to "such child or children as my said sister, Helen M. Foulke, may leave her surviving," etc., etc., and no satisfactory explanation can be given of his use of the word "children" in that connection, if, knowing his sister

could bear none, he meant the word "child" to refer to the one she had adopted. In truth, the language used was exactly the same as in the gift to his two other sisters, who had children, and the evident purpose was simply to put them all on the same plane.

The decree of the court below is affirmed, and each appeal is dismissed at the cost of appellant.