392 A.2d 1355

**In re ESTATE OF Joseph DeROY, Deceased.**

**Appeal of Jean DeRoy ARONSON.**

Supreme Court of Pennsylvania.

Argued March 7, 1978.

Decided Oct. 6, 1978.

Reargument Denied Nov. 8, 1978.

Mark B. Aronson, Pittsburgh, for appellant.

Sanford M. Aderson, Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

This appeal is brought by Jean DeRoy Aronson, the adopted daughter of Joseph DeRoy, deceased. Appellant claims the corpus of a testamentary trust set up for the benefit of her adoptive parents. The court below held that she was not entitled to the corpus of the trust because she was precluded by previous litigation. We believe the court below erred and we therefore reverse.

The testator, Joseph DeRoy, executed his last will and testament on May 25, 1918, and died shortly thereafter. By the terms of the will, a trust of one-eighth of the residuary estate was created for one of testator's sons, Israel DeRoy. The paragraph of the will so providing was paragraph NINTH(f), which reads in relevant part:

"(f) The equal one-eighth (⅛) part of said rest, residue and remainder of my estate I give, devise and bequeath unto my sons, Abraham J. DeRoy, and Al J. DeRoy, *IN TRUST, HOWEVER,* for the following uses and purposes, that is to say, in trust to . . . [pay the net income] monthly to my son, Israel DeRoy, during the term of his natural life. . . . Upon the decease of my said son, Israel DeRoy, the principal of said trust fund and any accrued income then on hand shall be divided in equal proportions share and share alike among the children of my said son, Israel DeRoy, or their issue, per stirpes and not per capita; should none of the children of my said son, Israel DeRoy, nor their issue, be living at the time of his decease, then and in that event the said equal one-eighth part of the residue of my estate and any accrued income then on hand shall continue to be held by my said sons, Abraham J. DeRoy and Al J. Deroy, *IN TRUST, HOWEVER,* for the following uses and purposes, that is to say, in trust . . . [to pay the net income] monthly to my daughter-in-law, Helen Goldman DeRoy, during the term of her natural life. . . . Should none of the children of my said son, Israel DeRoy, nor their issue, nor my said daughter-in-law, Helen Goldman DeRoy, be living at the time of the decease of my said son, Israel DeRoy, then and in that event the principal of said trust fund and any accrued income then on hand shall revert to my estate and be distributed in accordance with the intestate laws of the State of Pennsylvania. Should my said daughter-in-law, Helen Goldman DeRoy, be living at the time of the decease of my said son and become the beneficiary of said trust fund for the term of her natural life as above set forth, then and in that event upon the decease of my said daughter-in-law the principal of said trust fund and any

accrued income then on hand shall revert to my estate and be distributed in accordance with the intestate laws of the State of Pennsylvania."

Israel DeRoy and his wife, Helen Goldman DeRoy, had no children of their own but did, in April of 1921, adopt Jean Lois DeRoy (appellant) who was then four years of age. On January 28, 1933, Israel DeRoy died and in March of that year the trustees filed their first account. An audit hearing on the account was then held at which a principal question was whether the trustees should distribute the trust principal to Jean Lois DeRoy as "children" under paragraph NINTH(f) of the will, *supra*, or retain the funds in trust and distribute the income to Helen Goldman DeRoy as dictated by the will (should Israel DeRoy die without leaving children or issue of children surviving). The orphans' court appointed a guardian ad litem to represent the interests of Jean Lois DeRoy, who was then a minor 16 years of age. Following submission to the court of the guardian's "Report and Opinion", the auditing judge entered a decree nisi dated May 24, 1933, ordering that the trustees distribute the trust income to Helen Goldman DeRoy for "purposes specified in will." No exceptions were filed to the decree nisi, which therefore became the final decree of the orphans' court upon the expiration of ten days. No appeal was taken from the final decree.

For over 40 years, until her death in 1974, the income of the trust was paid to Helen Goldman DeRoy. Mrs. DeRoy's death prompted the filing by the surviving trustee of a final account in March of 1975. Jean Lois DeRoy, now by marriage Jean DeRoy Aronson, thereupon filed a claim for the balance of principal of the trust. After two hearings the auditing judge ordered that the trust principal be distributed to the intestate heirs of Joseph DeRoy. Appellant took timely exceptions to the decree nisi, which were dismissed by the court en banc, and this appeal followed.

Critical to the orphans' court's 1933 determination was the question of whether the term "children", as employed in paragraph NINTH(f) of Joseph DeRoy's will ("should none

of the *children* of my said son, Israel DeRoy, nor their issue,
be living" at the time of Israel's death), included adopted
children or whether it was restricted to the natural off-
spring of Israel DeRoy. The report of the guardian ad litem
who then represented the interest of Jean Lois DeRoy
included the following observations of the applicable law:

"In this particular case, it is to be noted that Joseph
DeRoy died on December 12, 1918, and that Jean Lois
DeRoy was adopted by Israel DeRoy and Helen Goldman
DeRoy, his wife, by Decree of Adoption dated February 3,
1921. Jean Lois DeRoy is, therefore, clearly *not* a child
'adopted before the date of the will.' My conclusion from
the wording of the above mentioned section of the Wills
Act [Section 16(b) of the Wills Act of June 7, 1917, P.L.
403] is, therefore, that the Will of Joseph DeRoy, must be
so construed in accordance with this statutory canon of
construction to exclude the gift over to any adopted child
of Israel DeRoy.

\*     \*     \*     \*     \*     \*

"In our case the testator's death occurred after 1917,
but the statutory canon of construction can not benefit
Jean Lois DeRoy because she was not adopted before the
date of the Will. Hence, the ordinary rules of construc-
tion govern the interpretation of Joseph DeRoy's Will.
These ordinary rules of construction to arrive at the
testator's intention as set forth in the decision above
quoted give the words 'child or children or issue' their
natural meaning, thus excluding any adopted children.
Since Joseph DeRoy wrote his Will and died before Jean
Lois DeRoy was adopted, he could not have intended that
this adopted child of his son should share in his estate.
The conclusion is, therefore, inescapable that Jean Lois
DeRoy can not take under the will of Joseph DeRoy,
deceased."

The orphans' court agreed and, as set forth above, ordered
the trustees to pay the income of the trust to Helen Gold-
man DeRoy. This conclusion was in accord with the law of
the Commonwealth as it existed in 1933. See, the Wills Act

of June 17, 1917, P.L. 403, Section 16(b); *Yates Estate*, 281 Pa. 178, 126 A. 254 (1924); *Puterbaugh's Estate*, 261 Pa. 235, 104 A. 601 (1918).

■ Appellant asserts that she is now entitled to distribution of the full balance of the account under the authority of *Tafel Estate*, 449 Pa. 442, 296 A.2d 797 (1972) (plurality opinion) wherein it was held that adopted children were presumed to be included in a testator's bequest or devise to his "child" or "children" (even though, as here, adopted subsequent to the execution of the will) unless a contrary intention appeared. See also *Estate of Flinn*, 479 Pa. 312, 388 A.2d 672 (1978); *Estate of Sykes*, 477 Pa. 254, 383 A.2d 920 (1978). The cases cited reflect a change in the thinking of this Court as to the presumptions which are applicable in determining whether an adopted child takes under a will or trust. It is now settled in Pennsylvania that in the absence of a clearly expressed intent to the contrary, the word "children" in a bequest or devise of the principle of a trust to a life tenant's children includes children adopted by the life tenant while they were minors, even though adopted after the death of the testator.

■ We conclude that the 1933 decree is not a bar to Jean DeRoy Aronson's present attempt to have the corpus of the trust distributed to her as a child of testator's son, Israel DeRoy.

" '[T]he rule of estoppel does not extend . . . the law which was applied in . . . [an] earlier distribution to . . . [a subsequent] distribution. Though the decree in the first may have rested on a mistaken application of a rule of law, a circumstance which can only be inquired into on appeal, so long as the decree stands *it is conclusive with respect to all rights in the fund distributed; but it cannot be made the basis of an estoppel when another distinct fund is to be distributed though it be part of the same estate.*' " (emphasis added).

*Arrott Estate*, 421 Pa. 275, 281, 217 A.2d 741, 745 (1966), quoting *Kellerman Estate*, 242 Pa. 3, 12, 88 A. 865, 868–69 (1913). Accord, *Brown Estate*, 408 Pa. 214, 229–31, 183

A.2d 307, 314–15 (1962); *Reamer Estate*, 331 Pa. 117, 120–24, 200 A. 35, 37–38 (1938); cf. *Catherwood Trust*, 405 Pa. 61, 173 A.2d 86 (1961).

Based on a rule of law that existed in 1933, the orphans' court then ordered that the *income* of the trust be distributed to Helen Goldman DeRoy. The principle of the trust was to remain with the trustees. In the final accounting, in 1975, the orphans' court ordered distribution of the *principle* of the trust. Because the rule of law on which the 1933 court based its order no longer accurately stated the law of this Commonwealth, "it was the duty of the auditing judge [in the 1975 accounting] to require that the present allocation be controlled by the law in effect at the time of the [1975] audit." *Arrott Estate*, supra 421 Pa. at 281, 217 A.2d at 745. A previous "rule of law made in the *distribution* of a portion of an estate is not binding . . . in a subsequent adjudication relating to another portion" (emphasis added) Id., 421 Pa. at 280, 217 A.2d at 744. See also, *Brown Estate*, supra 408 Pa. 214, 230, 183 A.2d 307, 315 (1962) "(. . . because a ruling of law by an Orphans' Court upon the *distribution* of a portion of an estate is not binding upon the Court in a subsequent adjudication relating to another portion of the same estate, the broad general principle of res judicata does not apply." (emphasis added), and *Reamers Estate*, 331 Pa. 117, 120–121, 200 A. 35, 37 (1938). ("It has consistently been held that a ruling of law by an orphans' court in dealing with the *distribution* of a portion of an estate is not binding upon a subsequent adjudication relating to another portion") (emphasis on original).

Likewise, the Restatement of Judgments, Section 70 (1948 Supp.), notes that the determination of a question of law is not conclusive between the parties in a subsequent adjudication on a different cause of action ". . . if it would be unjust to one of the parties or to third persons to apply one rule of law in subsequent actions between the same parties and to apply a different rule of law between other persons." Id., Section 70, Comment F.

The law as now stated by *Estate of Flinn,* supra, 479 Pa. 312, 388 A.2d 672 (1978), *Estate of Sykes,* supra, 477 Pa. 254, 388 A.2d 920 (1978), and *Tafel Estate,* supra, 449 Pa. 442, 296 A.2d 797 (1972) (plurality opinion), would require the orphans' court to distribute to appellant the principle of any trust established by language such as that used by testator in this case. It would obviously be unjust to apply that rule of law to adopted children other than appellant while adhering to the former rule when called upon to decide how the principle of the instant trust should be distributed.

Testator in the instant case provided for a distribution of the residue of his estate to be made in equal one-eighth parcels. Each parcel was given, either outright or in trust, to one of testator's eight surviving children. In those cases where the one-eighth share was put in trust for testator's child, a gift of the remainder of that one-eighth share was made to their "children" or "issue" should testator's children predecease him. In those cases where the one-eighth share was given absolutely, the gifts were made to the beneficiary ". . . and his heirs." Clearly, therefore, testator intended to bestow upon each of his eight children an equal portion of the residue of his estate. The manner in which each was to receive that one-eighth share varied to the extent that four of his sons were to receive their shares absolutely while his remaining son, and each of his three daughters received their shares in the form of a trust. The income of each one-eighth share was payable to each of them for life and upon their respective deaths, the principle of each one-eighth share was to be divided equally among their respective children per stirpes. Only in those cases where testator's children died without leaving "children" or "issue" surviving did testator provide that the one-eighth share given to such child should either go to that child's husband or wife as the case might be, or revert to testator's estate. This distribution scheme clearly indicates testator's intent to bestow the principle of these trust funds upon the children of his one son and three daughters for whom trust incomes for life were established by the will.

Applying the rule of law as stated by the orphans' court in its adjudication in 1933 to appellant now would thwart that distribution scheme. Applying that law would cause the child of one of testator's eight children (appellant) to receive nothing under the will while the children of the other children of the testator for whom trust funds were established would receive their respective shares of their parents' trusts. The injustice of such an application of the prior law is obvious, and is certainly not a result expressly compelled by testator's will.

We have reviewed other issues raised and conclude they are without merit.

For these reasons, we reverse the decree of the orphans' court and order that the principal (and any accrued income) of the trust fund established in paragraph NINTH(f) of Joseph DeRoy's will be distributed to appellant Jean DeRoy Aronson in conformity with this opinion.

ROBERTS, J., concurred in the result.

POMEROY, J., filed a dissenting opinion in which EAGEN, C. J., and O'BRIEN, J., join.

POMEROY, Justice, dissenting.

I disagree emphatically with the Court's approach and the Court's holding in this case. On an orphans' court accounting in 1933 on the occasion of the death of Israel DeRoy, life tenant under the testamentary trust of his father, Joseph DeRoy, the question was presented whether Jean DeRoy, an adopted minor child of Israel, was entitled to take the corpus of the trust on Israel's death. A guardian ad litem was appointed to represent the minor's interest, and the question was decided adversely to Jean. This was for the reason that, under the Wills Act of 1917, Act of June 7, 1917, P.L. 403, § 16(b), 20 P.S. Chap. 2, App. § 228, and the case law thereunder, an adoptive child was not deemed to be embraced within the meaning of the word "children" or "issue". *Yates Estate*, 281 Pa. 178, 126 A. 254 (1924); *Puterbaugh's Estate*, 261 Pa. 235, 104 A. 601 (1918). The majority con-

cedes that this decision of the court was correct and in accordance with the law as it then stood. More than forty years later, Jean DeRoy, now Aronson, the present appellant, raised precisely the same question in the same court. Applying well-known principles of res judicata, the orphans' court refused to allow the matter to be relitigated. But because our case law has changed, see, *e. g., Estate of Flinn*, 479 Pa. 312, 388 A.2d 672 (1978); *Estate of Sykes*, 477 Pa. 254, 383 A.2d 920 (1978), this Court now holds that Jean is indeed entitled to the entire corpus of the trust share in question.

This holding not only is contrary to the proper construction of the testator's will but also disregards the salutary and jurisprudentially important principle of finality of judgments. It is, moreover, palpably unfair to the heirs of Joseph DeRoy who since 1933 have had a legitimate right of expectancy[1] in the corpus of this portion of the testator's estate. Hence this dissent.

Upon the death of Israel DeRoy, the original life tenant, it was essential that the orphans' court decide whether Israel had any "children", for if so the trust was to end and the corpus was to go then and there to such children. Similarly, if there were no children and Israel's wife did not survive him, the trust also was to end, the corpus then going to the heirs at law of Joseph, the testator, under the intestacy laws of Pennsylvania. If there were no children of Israel but his wife Helen survived him, the trust continued for the life of Helen as income beneficiary, and on her death was to be distributed to the heirs of Joseph under the intestacy laws. Helen did in fact survive Israel and continued to live for another forty-one years.

---

1. Under the terms of paragraph NINTH(f) of Joseph's will, the remainderman could not be determined conclusively until the death of the second life tenant, Helen Goldman DeRoy, for at that time the corpus was to revert to the testator's estate "and be distributed in accordance with the intestate laws." However, a person who was an intestate heir of Joseph at the time of Israel's death (or became such at anytime thereafter) knew that he would be entitled to his distributive share as an heir at the time of Helen's death, subject only to his surviving Helen.

In the 1933 proceedings the orphans' court, acting through then President Judge Thomas P. Trimble, decided that Jean, by reason of having been adopted, did not qualify as included within the term "children" of Israel as that word was used in Joseph's will, and decreed the balance for distribution back to Joseph's trustees for "purposes specified in will." That decree meant, and could only mean, that the trustees were to pay the income to Helen Goldman DeRoy as life tenant for the remainder of her life, and that at Helen's death the entire trust fund as then constituted was, in the words of the will, "to revert to [the estate of Joseph DeRoy] and be distributed in accordance with the intestate laws of the State of Pennsylvania." [2]

While it is true that *Estate of Flinn, supra ; Estate of Sykes, supra,* following the lead of the plurality in *Tafel Estate,* 449 Pa. 442, 296 A.2d 797 (1972)—cases upon which the majority relies—reflect a change in the thinking of this Court as to the presumptions which are applicable in determining whether an adopted child takes under a will or trust, it is equally true that a change in the decisional law will not operate to alter the rights of persons which were determined by a final order of a court of competent jurisdiction entered prior to the announcement of the new law. See *Delaware River Port Authority v. Pennsylvania Public Utility Commission,* 408 Pa. 169, 182 A.2d 682 (1962); Restatement of Judgments, § 1 (1942). Rather, " 'the interests of the State and of the parties require that the validity of the claim and

---

2. The 1933 decree of the orphans' court did not order the trustees to "distribute the trust income to Helen Goldman DeRoy for 'purposes specified in the will' ", as stated in the Court's opinion, *ante* at 407. Nor did the court "order the trustees to pay the income of the trust to Helen Goldman DeRoy," as described in the Court's opinion, *ante* at 408, repeated in substantially the same words at 410. These statements are distortions of the 1933 decree which, as stated in the text, was merely to the trustees "for purposes specified in will." This tampering with the words of the instrument here being construed is obviously to lend support to the Court's theory that the only issue determined by Judge Trimble was one of entitlement to income, the entitlement to corpus not becoming an issue until the accounting of 1975. This proposition is disingenuous and specious; it is not supported by the record.

any issue actually litigated in the action shall not be litigated again by them.'" *Burke v. Pittsburgh Limestone Corporation*, 375 Pa. 390, 396, 100 A.2d 595, 599 (1953), quoting Restatement of Judgments, § 1 (1942). In the case of *Safeguard Mutual Insurance Company v. Williams*, 463 Pa. 567, 574, 345 A.2d 664, 668 (1975), we held that in the interest of preserving the finality of judgments, the doctrine of collateral estoppel [3] operated to bar a party from reasserting a claim when:

"1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea [of collateral estoppel] is asserted was a party or in privity with a party to the prior adjudication, and 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action."

Accord: *Estate of Flinn, supra* ; *Estate of Ellis*, 460 Pa. 281, 333 A.2d 728 (1975).

In my view, the majority is in error in refusing to apply the criteria reiterated in the *Safeguard Mutual* case, *supra*, to the facts of this case. When that is done, the following appears: First, the issue upon the audits of both the 1933 account and the 1974 account of the one-eighth share of Joseph DeRoy's residuary estate was identical, *viz.*, whether a child adopted by the testator's son, Israel, in 1921 is entitled to take under the provisions of a will made in 1918 by the adopting parent's father and which specifies "children" of testator's son as beneficiaries upon the death of the

**3.** The concept embraced in the phrase "collateral estoppel" is frequently referred to as "issue preclusion", a term which encompasses both "collateral estoppel" and the doctrine of res judicata. See Restatement (Second) of Judgments, § 68 (Tent. Draft No. 4, 1977). The court below, in the case at bar, held the appellant's claim barred by the doctrine of res judicata. While such a conclusion is no doubt valid in view of the facts of this case, I am satisfied that the appellant's action is precluded under collateral estoppel and therefore find it unnecessary to discuss the somewhat more stringent doctrine of res judicata.

son.[4]  Second, the decree *nisi* entered May 24, 1933, by its terms, became final ten days following its entry when no exceptions were filed thereto.  Third, the "plea" is asserted against Jean DeRoy Aronson who, through her guardian ad litem, was a party to the 1933 decree.[5]  Fourth, it is clear

4.  Appellant argues and the Court seems to agree that the issue in 1933 was Jean's right as an adopted child to take as opposed to her mother, whereas the present controversy is between Jean and the testator's other heirs-at-law.  The record does not support this restrictive reading of what occurred in 1933, see n.2, *supra*, but if it were to be assumed *arguendo*, that it is an accurate portrayal of the proceedings, the resolution of both the 1933 question and the current question still depends on an interpretation of the testator's intent under his 1918 will.  The 1933 decree of the orphans' court decided that the testator did not intend to include adopted children and "all issues of fact which were actually adjudicated in the former action and essential to the judgment therein are concluded as between the parties."  *Pilgrim Food Products Company v. Filler Products, Inc.*, 393 Pa. 418, 421–22, 143 A.2d 47, 49 (1958).  See also *Walker v. Ohio River Co.*, 428 Pa. 552, 239 A.2d 206 (1968); *Larsen v. Larsen*, 392 Pa. 609, 141 A.2d 353 (1958); *Thal v. Krawitz*, 365 Pa. 110, 73 A.2d 376 (1950).  Cf., *Commonwealth v. Ligon*, 454 Pa. 455, 314 A.2d 227 (1973).  Moreover, there is but one fund here with which both accounts and the hearings relative thereto were concerned.  Compare *Estate of Flinn, supra*.  That fund is the principal of the trust for Israel DeRoy which was previously decreed to the trustees in 1933 for "purposes specified in will."  The fact that one of those purposes happened to be payment of income to the life tenant is but incidental to the issue presented in 1933 and simply follows from the initial determination of which party to the 1933 adjudication was entitled to principal.

5.  See Section 85 of the Restatement (Second) of Judgments (Tentative Draft No. 2, 1975) which provides in relevant part:

"(1) A person who is not a party to an action but who is represented by a party is bound by and entitled to the benefits of the rules of res judicata as though he were a party.  A person is represented by a party who is:

\*       \*       \*       \*       \*       \*

"(c) The executor, administrator, guardian, conservator, or similar fiduciary manager of an interest of which the person is a beneficiary;  .   .   ."

See also *Kenna Estate*, 348 Pa. 214, 34 A.2d 617 (1943).

In *Estate of Ellis*, 460 Pa. 281, 333 A.2d 728 (1975), this Court dispensed with a prior requirement of collateral estoppel, *viz.*, that both parties to a controversy be bound by the previous adjudication before either party could claim the benefit of that adjudication.  See Restatement of Judgments, § 93(b) (1942).  Nevertheless, the appellees herein (the intestate heirs) who assert the plea of collateral estoppel were in fact parties to the 1933 decree through privity with

that the appellant, through her guardian ad litem, had a full and fair opportunity to litigate the question in the prior action. It thus becomes clear that appellant is now precluded from asserting again her claim to entitlement to all of the corpus of her adoptive father's share of the testator's estate under paragraph NINTH(f) of the will. That issue was settled once and for all in 1933.

The implication of today's decision is, I fear, that the doctrine favoring the finality of judgments is now subject to the condition that the prior litigation shall have terminated in a manner seen to be agreeable to a majority of this Court as from time to time constituted. Much as one might wish to do so, it is obviously impossible to give the benefit of new judicial insights to all persons whose lawsuits involving the same legal problems were decided before the current wisdom was received and announced in decisional form. Indeed, the attempt to do so not only puts an unwarranted burden on the already overtaxed judicial system, but as here, is frequently unfair to other persons.[6] Because the question here raised was finally adjudicated in prior litigation, the orphans' court division was correct in holding appellant barred from reasserting the issue. The decree below should be affirmed.

EAGEN, C. J., and O'BRIEN, J., join in this dissenting opinion.

the trustees (see Section 85 of the Restatement (Second) of Judgments, *supra*) and obtained at the least a right of expectancy, if not technically a vested interest, see n.1, *supra*, when the trustees were instructed to retain the funds for the purposes expressed in the will, i. e., payment of the income to the life tenant and upon her death, to distribute the trust property to the intestate heirs.

6. It is important to note that under the schedule of distribution filed by the trustee and upheld by the court below, Jean Lois DeRoy is to be considered an heir-at-law of Joseph DeRoy and will, according to the laws of intestacy, receive a 12.5% share of the trust corpus. See the Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 Pa.C.S.A. § 2108 which reenacts prior law (Intestate Act of June 7, 1917, P.L. 429, § 16, 20 P.S. § 102). Thus, contrary to the assertion of the majority opinion, the result reached below is fair and equitable to all parties involved.