506 A.2d 951

**In re ESTATE OF Frank S. KAUFFMAN, Deceased.**

**Appeal of Charlynn Jeanne TORRENCE.**

Superior Court of Pennsylvania.

Argued Dec. 17, 1985.
Decided March 20, 1986.

Henry C. Herchenroether, Jr., Pittsburgh, for appellant.

Before BECK, JOHNSON and MONTGOMERY, JJ.

JOHNSON, Judge:

This case presents the question of whether a person, who was adopted while an adult, qualifies as a "child" of the adopting parent, when construing the will of a testator who is not the adopting parent.

The appellant in this case was 35 years old when she was adopted by Ruth S. Kauffman Torrence [Ruth]. There is nothing in the record indicating that a parent-child relationship existed between Ruth and the appellant either during her minority or majority. Ruth received income for life from a trust established by the will of her father, Frank S. Kauffman. Upon Ruth's death, the remainder was to go to her children. If she left no children, then it was to be divided among other specified legatees. The Orphans' Court en banc affirmed the Decree of the auditing judge who held that appellant was not entitled to share in the estate of Frank S. Kauffman. The auditing judge found that, because appellant was adopted as an adult and during her minority had no parent-child relationship with Ruth, appellant was not considered to be the child of Ruth for the purpose of construing Frank S. Kauffman's will.

Appellant argues that she qualifies as Ruth's "child" for the purposes of construing the will and should receive the trust remainder. We disagree, and therefore affirm.

In determining the question presented in this case, we look first for any controlling statutory language. Ruth's father, the testator, died in 1951. The law in effect at the date of death governs the construction of the testator's will.

*In re Estate of Linn,* 435 Pa. 598, 258 A.2d 645 (1969). More specifically, an adopted child's rights of inheritance are determined by the statute in effect at the time inheritance becomes effective, i.e., the date of the testator's death. *In re Estate of Tower,* 463 Pa. 93, 343 A.2d 671 (1975). In the case under consideration, the statute in effect in 1951 was the Wills Act of 1947, P.L. 89, 20 P.S. § 180.14(6). This statute provided that:

> In construing a will making a devise or bequest to a person or persons described by relationship to the testator or to another, any person adopted before the death of the testator shall be considered the child of his adopting parent or parents and not the child of his natural parents: Provided, That if a natural parent shall have married the adopting parent before the testator's death, the adopted person shall also be considered the child of such natural parent.

*Id.* Appellant was adopted after the testator's death. The statute, thus, does not resolve the question.

We now turn to relevant case law. The Pennsylvania Supreme Court has stated:

> "It is, of course, a cardinal rule that a will is to be construed according to the intent of the testator." *Hamilton Estate,* 454 Pa. 495, 498, 312 A.2d 373, 374 (1973); accord, *Blough Estate,* 474 Pa. 177, 378 A.2d 276 (1977); *Hill Estate,* 432 Pa. 269, 247 A.2d 606 (1968).... The intent of a testator must appear with reasonable certainty, such that there can be little doubt of his intent. If, from the language of the document, the scheme of distribution, and the relevant facts and circumstances, a court cannot determine a testator's intent with reasonable certainty, it must resort to canons of construction. E.g., *Schappell Estate,* 424 Pa. 390, 227 A.2d 651 (1967); *Houston Estate,* 414 Pa. 579, 201 A.2d 592 (1964).

*Estate of Sykes,* 477 Pa. 254, 257–58, 383 A.2d 920, 921 (1978) (footnote omitted). In the instant case, the testator's will does not disclose, with reasonable certainty, his intent

4

as to the inclusion of adult adoptees in the definition of "children". Neither the language of the will,[1] the scheme

1. The fourth paragraph of Frank S. Kauffman's will establishes the trust, the remainder of which is sought by appellant. The paragraph provides:

FOURTH: If either my daughter Ruth K. Torrence or my sister, Mary Telfair survive me, I give, devise, and bequeath all the rest and remainder of my property and estate, personal and real, hereinafter called my residuary estate, to the Peoples-Pittsburgh Trust Company of Pittsburgh, Pennsylvania IN TRUST HOWEVER, for the following uses and purposes:

(a) The Trustee shall pay out of the net income arising from my residuary estate, the sum of One Hundred ($100.00) Dollars per month to my sister Mary Telfair, 1266 Michigan Avenue, Bufflao [sic], New York, for a period of five years from the date of my death if she shall so long live, and after said period of five years, shall pay to her the sum of Fifty ($50.) Dollars per month during the remainder of her life, and shall pay to my daughter Ruth K. Torrence, the balance of the said net income for and during the lifetime of the said Ruth K. Torrence, provided however, that should my daughter Ruth K. Torrence pre-decease my sister and leave no children, this trust shall terminate and the principal of my Estate shall be distributed as provided in Paragraph Fourth (e) of this my last Will and Testament.

(b) Upon the death of my said sister, the entire net income shall be paid to my daughter Ruth K. Torrence, if living, for and during the term of her life.

(c) Should my said sister Mary Telfair survive my daughter Ruth, and the latter leave children surviving her, the Trustee shall continue the monthly payments to my said sister as provided in Paragraph Fourth (a) herein, during the remainder of the life of my said sister, and shall pay the balance of the net income in equal shares to the child or children of my said daughter Ruth K. Torrence, and on the death of my said sister, the Trustee shall pay the entire net income to the child or children of my said daughter in equal shares during the minority of the said children, and when the youngest of said children shall reach the age of twenty-one (21) years the trust shall then terminate and the entire principal shall be divided equally among the children of my said daughter surviving at the time of her death.

(d) Upon the death of my said daughter Ruth, she having survived my said sister, the Trustee shall pay the net income in equal shares to her children during their minority, and when the youngest of said children shall reach the age of twenty-one (21) years, the Trust shall terminate and the principal shall be divided equally among the children surviving at the time of my daughter's death.

(e) Upon the death of my daughter Ruth, leaving no children surviving her, the entire principal of my said residuary estate shall be divided into Six (6) equal parts and One (1) part to the children of my deceased brother, John Kauffman of Batavia, New York, One (1) part to the children of my deceased brother Nicholas Kauffman of Batavia, New York, One (1) part to the children of my deceased

of distribution, nor the relevant facts and circumstances help us to ascertain the intent of the testator. Accordingly, we resort to canons of construction to supply the testator's likely intent. *Id.*

In *Tafel Estate*, 449 Pa. 442, 296 A.2d 797 (1972), our supreme court addressed the question of an adoptee's rights of inheritance. A plurality of the court stated the rule of construction that a court:

> *presumes* that a testator, in the absence of any *expressed* intention in the will to the contrary, intended to treat adopted children in the same manner as natural children and to *include* in the testamentary words "child" or

brother Charles Kauffman of Cuba, New York, One (1) part to my brother George Kauffman of Rochester, New York, One (1) part to my sister Mary Telfair of Buffalo, New York, and One (1) part to my sister-in-law Mrs. Mabel Daniels of Lakewood, Ohio. Should the aforesaid George Kauffman, Mary Telfair, or Mabel Daniels pre-decease me, or pre-decease my daughter Ruth, the share of such person shall go to his or her children surviving at the time of my death.

(f) The Trustee shall have authority to pay to my said daughter, Ruth K. Torrence, or to expend on her behalf, such sum or sums from the principal of my residuary estate, as in the opinion of the Trustee may be required to relieve emergency or distress, and provide for her proper support, provided however, that no payment shall be made to my said daughter or for, or on her account, from the principal of my residuary estate in excess of $1200.00 in any one year.

(g) I appoint the Trustee herein named to be Trustee in the nature of a Guardian for all minor persons who may participate in the distribution of the principal or my residuary estate, and I authorize it, in that capacity, to apply to the maintenance and education of each such minor person so much of the income arising from and of the principal of his or her distributive portion as it may consider proper and, in the management thereof, to exercise all the powers, authority, and discretion set forth in the FIFTH article of this my WILL.

(h) The beneficiaries hereunder shall have no right to anticipate, pledge, or in any manner alienate their interest in the income arising from or in the principal of my residuary estate, and their interests shall not be liable for their debts, contracts or engagements, or subject to execution, attachment, sequestration or other legal process.

Ruth survived the testator's sister, Mary Telfair. The appellant argues that she should receive the remainder as provided in subsection (d).

"children" an adopted child regardless of the date of his or her adoption.

*Id.,* 449 Pa. at 453–54, 296 A.2d at 803 (emphasis in original).

The court also stated that:

The rule of construction herein announced applies where the adoptee or adoptees at the time of adoption were minors and not adults and does not apply where an adoptee or adoptees was or were adults at the time of adoption. By the restriction of this rule of construction to minor adoptions we serve and effectuate the purpose of preventing an adult adoptee or adoptees from being considered a testamentary "child" or "children" where such adoption is undertaken by a person other than the testator to prevent a gift over in default of a natural "child" or "children" and thus, in effect, rewrite the testator's will.

*Id.,* 449 Pa. at 454, 296 A.2d at 803 (citation omitted).

The facts of *Tafel* involve children adopted during their minority. Also, the *Tafel* opinion is not a majority opinion; rather, it is a plurality opinion. Thus, *Tafel* in and of itself does not decide the question before us. *Mt. Lebanon v. County Board of Elections,* 470 Pa. 317, 368 A.2d 648 (1977).

However, a majority of the Pennsylvania Supreme Court followed the rationale of *Tafel* in *Estate of Sykes,* 477 Pa. 254, 383 A.2d 920 (1978). In *Sykes,* the court applied the canon of construction that, absent an expressed contrary intent, there is a presumption that a testator intends the term "issue" to include children by adoption. *Id.,* 477 Pa. at 260, 383 A.2d at 923. The *Sykes* court noted that the children involved in the *Sykes* case were minors when adopted and the court did not determine whether the presumption also applies when an adoption occurs after minority. *Id.* at n. 4. After *Sykes,* the law of Pennsylvania is that a court presumes that a testator, absent contrary

expressed intent, intends to include children adopted during their minority when he uses the words "issue" and "children". *See, e.g., In re Estate of DeRoy,* 481 Pa. 403, 392 A.2d 1355 (1978).

In the recent case *In re Estate of Ketcham,* 343 Pa.Super. 534, 495 A.2d 594 (1985), this Court had occasion to construe the language of a will as it applies to a person adopted during majority. The *Ketcham* case involved two adoptees, one adopted in infancy, the other adopted at the age of fifty-six, both of whom wished to share in the distribution from a testamentary trust. The testatrix's will in *Ketcham* did not express a clear intent with regard to adopted children. The Court applied the *Tafel* canon of construction to the adoptee who had been adopted while an infant, and allowed her to share in the trust. Because the woman had been adopted during her minority, she clearly came within the *Tafel* canon which presumes that absent a contrary intent, children adopted during minority are to be included in the general designation "children".

However, our Court refused to apply the *Tafel* canon to the adoptee who had been adopted during majority. We found as a fact that initially, the adopting parent declined to adopt the woman when she learned that the existing law precluded inheritance by adoptees. The Court found that the adoption was only effectuated after the adopting parent learned that a relative's adopted child would share in the Ketcham trust due to changes in the law. The Court concluded that the sole purpose for the adoption of the woman in her majority was to secure an inheritance. *Id.,* 481 Pa. at 540, 495 A.2d at 597.

There appear to be two main policy considerations upon which these precedents rely and which must guide this Court in deciding the case before us. First, there is the policy that an adopted child should have the same rights as a natural child. This policy is well documented in the adoption statutes of this Commonwealth. The Adoption

Act, 23 Pa.C.S. § 2101 *et seq.*, provides, in pertinent part, that when a court enters an adoption decree, the decree shall direct "that the person proposed to be adopted shall have all the rights of a child and heir of the adopting parent or parents and shall be subject to the duties of a child to him or them." 23 Pa.C.S. § 2902(a). The *Tafel* court stated that:

> Beginning with the first adoption statute of 1855, on *eight* occasions whenever the legislature has spoken on the effect of an adoption once decreed, the legislature has expressly, specifically and unequivocally mandated that the adopted person "shall have *all* the rights of a child and heir of" the adoptive parents.

*Tafel*, 449 Pa. at 447, 296 A.2d 799–800 (footnote omitted) (emphasis in original). This policy of equality is promoted by the inclusion of adoptees within the words "children," "issue," etc. *See Sykes* 477 Pa. at 260, 383 A.2d at 923. *See also Buzby Estate*, 30 Pa.Fiduc. 5 (Orphans' Court, Philadelphia, 1979).

The second policy which we must consider is that the court will not allow a legatee to "rewrite" a testator's will after the testator's death. This was the rationale behind the exclusion of adult adoptees from the *Tafel* presumption. *Tafel*, 449 Pa. at 454, 296 A.2d at 803. *See Wyman Trust*, 23 Pa.Fiduc. 286, 290 (Orphans' Court, Montgomery County, 1973). In promoting this policy, courts seek to effectuate the intent of the testator as expressed in the will. When an adoption is effectuated because of a parent-child relationship, then it is logical for the court to presume that when no contrary intent is shown, the testator would have wanted the adopted child included in a legacy or bequest to "children". In such a case, the adopted person fits the meaning commonly associated with the word "child," and is no different from natural siblings except for the biological ties. *See Tafel*, 449 Pa. 442, 296 A.2d 797 (1972). However, when no parent-child relationship exists, and the adoption is effectuated to secure an inheritance, it would not be logical

to presume that the testator would have intended the adoptee to be included. Accordingly, the court in construing the language of the will will exclude such adult adoptees who had no parent-child relationship from sharing in a legacy or bequest to "children." *E.g., Ketcham*, 343 Pa.Super. 534, 495 A.2d 594 (1985).

The record before us does not explain the motives underlying the adoption of appellant at the age of thirty-five. Appellant does not point to any affirmative evidence in the record which would establish that a parent-child relationship existed between Ruth and the appellant during appellant's minority, or at any time. While we cannot conclude, as in *Ketcham*, that the sole reason for the adoption was to secure the inheritance, we refuse to extend the *Tafel* canon to the facts of this case, absent at least some showing that the adoption of appellant during her majority was done for reasons other than an attempt to share in the inheritance.

Of course, a testator may define "children" to include persons adopted during majority who had no parent-child relationship with the adoptive parent; an expression of such an intent will accomplish that result. In the absence of such an expression, however, we refuse to presume such an intent.

We should note that the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 101 *et seq.*, while not in effect at the testator's death and hence inapplicable to the facts of this case, is the statute currently in effect. The Rules of Interpretation under this Code, which would be used to construe a similar will currently probated when no contrary intent appears therein, provides that:

[I]n construing a will making a devise or bequest to a person or persons described by relationship to the testator or to another, any adopted person shall be considered the child of his adopting parent or parents, except that, in construing the will of a testator who is not the adopting parent, an adopted person shall not be considered the

child of his adopting parent or parents unless the adoption occurred during the adopted person's minority or reflected an earlier parent-child relationship that existed during the child's minority.

20 Pa.C.S. § 2514(7). Similar language appears in the Rules of Interpretation applicable to conveyances at 20 Pa.C.S. § 6114(4).

As we stated above, appellant was not adopted during her minority and the record does not reflect an earlier parent-child relationship between appellant and Ruth existing during appellant's minority. The will expresses no intent to include appellant in the word "children," thus the result which we reach in this case, for a testator dying prior to the effective date of the Probate, Estates and Fiduciaries Code, is harmonious with the result which would be reached under the Code.

We recognize that, in dealing with adoption of minors, an adopted child should have the same rights as a natural child. We are also mindful that we may not allow a legatee to "rewrite" a testator's will after the testator's death. Here we are faced with the claim of an adult adoptee who was adopted by a seventy-three year old legatee some twenty-four years following the death of the testator. The rule of construction pronounced in *Tafel Estate* is, therefore, clearly inapplicable.

We hold that without any showing of a parent-child relationship existing during an adoptee's minority, a person adopted during majority may not be presumptively considered to be a "child" of the adoptive parent when construing the will of a testator who has died and whose will becomes effective prior to the time of the adult adoption.

Accordingly, in construing testator's will, appellant is not considered to be a "child" of Ruth, and is not entitled to share in the testator's estate.

Order affirmed.