551 A.2d 309

ESTATE OF Albert Walter GOAL, Deceased,

Charlotte Ann Hendrickson, Elizabeth Jean Jackson, and Johnnie Mae Bauder, Appellees.

Appeal of Elige Jim HOLLIFIELD.

Superior Court of Pennsylvania.

Argued Aug. 16, 1988.

Filed Dec. 8, 1988.
Petition for Allowance of Appeal Denied May 31, 1989.

Arthur J. Stewart, Warren, for appellant.

Sue A. Pfadt, Erie, for appellees.

Before BROSKY, KELLY and HESTER, JJ.

KELLY, Judge:

In this appeal, we are called upon to consider whether an adult adoptee qualifies as an "issue" of an adopting parent under the provisions of a will drafted by a testator who died prior to the adoption of the adult adoptee by the testator's child. We find that the adult adoptee does not. Accordingly, we affirm the final decree of the trial court.

The relevant facts and procedural history may be summarized as follows. Albert Walter Goal (Testator) died August 5, 1954, leaving his testamentary trust under date of May 25, 1950, appointing Warren Bank and Trust Company or its successor as Trustee and Executor of Testator's Last Will and Testament.

Testator devised and bequeathed, except for a $1,000.00 cash provision, all of his property in trust for the benefit of his children, Helen Uldene Renick and Robert Hamilton Goal (Decedent). Under the terms of the trust, the trustee is directed to pay over and deliver two-thirds (⅔) of the net income from the trust estate to Helen U. Renick and one-third (⅓) of the net income to Decedent for their respective lives. The trust further directs, after the demise of Helen Renick and Decedent, their respective fractional share of income is to be distributed to the issue of Testator's two children *per stirpes*.[1]

1. The terms for the final distribution of the trust provided that at the time fixed for distribution if there should remain any portion of the trust estate undistributed, the same shall be distributed to Testator's

On March 3, 1987, Decedent died. He was survived by three natural daughters, Charlotte A. Hendrickson, Elizabeth Jean Jackson and Johnnie Mae Bauder. Decedent was also survived by his adopted son, appellant, adopted on January 30, 1984, when he was forty-one years of age.[2]

On June 26, 1987, appellant filed a petition for declaratory judgment under Section 7535 of the Judicial Code (42 Pa.C.S.A. § 7535) addressing the rights of fiduciaries and other persons in regard to a person interested in the estate of a decedent. A hearing was held before Judge Wolfe on October 26, 1987. On November 30, 1987, Judge Wolfe filed his adjudication and decree nisi which denied appellant his requested relief. Timely exceptions were filed and denied. On December 23, 1987, Judge Wolfe entered his decree absolute. This timely appeal followed.

> Our standard of review in this case is well settled. In reviewing findings of the Orphan's Court, we must accept as true all evidence in the record supporting its findings and all reasonable inferences therefrom. *Adoption of S.H.*, 476 Pa. 608, 383 A.2d 529 (1978). We will uphold its decision so long as it is supported by competent evidence and no abuse of discretion or error of law was committed. *Id.*

*Estate of Matson*, 374 Pa.Super. 61, 65–66, 542 A.2d 147, 149 (1988).

Appellant contends that the trial court incorrectly broadened the rule of construction regarding inheritance by adult adoptees announced in *In Re Estate of Tafel*, 449 Pa. 442, 296 A.2d 797 (1972), so as to exclude him from a share in the trust. Appellant maintains that, pursuant to the rule of construction announced in *Tafel*, the law presumes that in the absence of any expressed intention to the contrary, a testator intended to treat adopted children in the same

heirs at law in the manner provided by intestate laws of the Commonwealth of Pennsylvania, then in force.

**2.** Decedent had previously been married to the mother of his three natural daughters and following her death, in the spring of 1979, Decedent married appellant's mother, Bernice Hollifield, in the summer of 1979.

manner as natural children. Appellant asserts that the *Tafel* rule of construction applies regardless of the age of the child adopted. Moreover, appellant argues that the only exception to the rule is where an adoption of an adult is done in order to frustrate a gift over. Thus, appellant argues, because his adoption did not prevent a gift over but merely lessened the natural children's share, he is entitled to share in the income from the trust. We disagree.

In *Tafel,* our Supreme Court addressed the question of an adoptee's rights of inheritance. A plurality of the Court stated the rule of construction as follows:

> This rule does not conflict with any such legislation but simply *presumes* that a testator, in the absence of any *expressed* intention in the will to the contrary, intended to treat adopted children in the same manner as natural children and to *include* in the testamentary words 'child' or 'children' an adopted child regardless of the date of his or her adoption.

449 Pa. at 453–454, 296 A.2d at 803. (Emphasis in original). Admittedly, this rule would allow appellant to share in the trust income, as there was no clear expression by the testator that adopted children were excluded. Further reading of the plurality decision, however, reveals that the Court limited the application of this presumption to children adopted in minority. The Court stated:

> The rule of construction herein announced applies where the adoptee or adoptees at the time of the adoption were minors and not adults and *does not apply where an adoptee or adoptees was or were adults at the time of adoption.*

449 Pa. at 454, 296 A.2d at 803. (Emphasis added). The Court's reasoning for excluding adult adoptees is as follows:

> By the restriction of this rule of construction to minor adoptions we serve and effectuate the purpose of preventing an adult adoptee or adoptees from being considered a testamentary 'child' or 'children' where such adoption is undertaken by a person other than the testator to prevent

a gift over in default of a natural 'child' or 'children' and thus, in effect, rewrite the testator's will. *Cf. Holloway Estate*, 444 Pa. 624, 281 A.2d 631 (1971).

449 Pa. at 454, 296 A.2d at 803. Thus, in the instant case, the trial court did not unduly broaden the rule announced in *Tafel*. The rule of construction announced in *Tafel* applies *only* where the adoptee at the time of the adoption was a minor and not an adult. Thus, an adult adoptee is not to be treated as a "child" under the terms of a will unless an express provision of the will or a codicil thereto so provides, in the same way that an adoptee of a beneficiary under a will may not be permitted to invade a gift over provision by the fact of adoption.

The facts of *Tafel*, however, involved children adopted during their minority. Also, the *Tafel* opinion is not a majority opinion; rather, it is a plurality opinion. Thus, *Tafel* does not control precedentially the disposition of the question before us. *Mt. Lebanon v. County Board of Elections*, 470 Pa. 317, 368 A.2d 648 (1977); *In Re Estate of Kauffman*, 352 Pa.Super. 1, 506 A.2d 951 (1986).

In *In Re Estate of Ketcham*, 343 Pa.Super. 534, 495 A.2d 594 (1985), this Court had occasion to construe the language of a will as it applies to a person adopted during majority. The *Ketcham* case involved two adoptees, one adopted in infancy, the other adopted at the age of fifty-six, both of whom wished to share in the distribution from a testamentary trust made by the mother of the son and daughter by whom the claimants were adopted. There was no express intention in the will regarding adopted children. Applying *Tafel*, this Court held that the child adopted during her minority should share in the trust.

However, this Court refused to apply the *Tafel* rule of construction to the adoptee who was adopted during her majority. In *Ketcham*, this Court found as a fact that initially, the adopting parent declined to adopt the woman when she was informed that the existing law precluded adoptees from inheriting. The adoption was not effectuated until after the parent learned of the change in the

existing law which would permit inheritance by adoptees. This Court concluded, therefore, that the sole purpose for the adoption of the woman in her majority was to secure an inheritance. 343 Pa.Superior Ct. at 540, 495 A.2d at 597. This Court refused to permit the daughter to manipulate the mother's testamentary intent by an expedient adult adoption for the purpose of invading an already existing gift over provision.

In *In Re Estate of Kauffman, supra,* the rationale for distinguishing between child and adult adoptees was set forth explicitly as follows:

> There appear to be two main policy considerations upon which these precedents rely and which must guide this Court in deciding the case before us. First, there is the policy that an adopted child should have the same rights as a natural child. This policy is well documented in the adoption statutes of this Commonwealth. The Adoption Act, 23 Pa.C.S. § 2101 *et seq.,* provides, in pertinent part, that when a court enters an adoption decree, the decree shall direct "that the person proposed to be adopted shall have all the rights of a child and heir of the adopting parent or parents and shall be subject to the duties of a child to him or them." 23 Pa.C.S. § 2902(a). The *Tafel* court stated that:

> > Beginning with the first adoption statute of 1855, on *eight* occasions whenever the legislature has spoken on the effect of an adoption once decreed, the legislature has expressly, specifically and unequivocally mandated that the adopted person 'shall have *all* the rights of a child and heir of' the adoptive parents.

> *Tafel* [449 Pa.] at 447, 296 A.2d 799–800 (footnote omitted) (emphasis in original). This policy of equality is promoted by the inclusion of adoptees within the words 'children,' 'issue,' etc. *See [Estate of] Sykes* 477 Pa. [254] at 260, 383 A.2d [920] at 923 [1978]. *See also Buzby Estate,* 30 Pa.Fiduc. 5 (Orphans' Court, Philadelphia, 1979).

The second policy which we must consider is that the court will not allow a legatee to 'rewrite' a testator's will after the testator's death. *This was the rationale behind the exclusion of adult adoptees from the Tafel presumption. Tafel* [449 Pa.] at 454, 296 A.2d at 803. *See Wyman Trust,* 23 Pa.Fiduc. 286, 290 (Orphans' Court, Montgomery County, 1973). In promoting this policy, courts seek to effectuate the intent of the testator as expressed in the will. When an adoption is effectuated because of a parent-child relationship, then it is logical for the court to presume that when no contrary intent is shown, the testator would have wanted the adopted child included in a legacy or bequest to 'children'. In such a case, the adopted person fits the meaning commonly associated with the word 'child,' and is no different from natural siblings except for the biological ties. *See Tafel,* 449 Pa. 442, 296 A.2d 797 (1972). *However, when no parent-child relationship exists, and the adoption is effectuated to secure an inheritance, it would not be logical to presume that the testator would have intended the adoptee to be included. Accordingly, the court in construing the language of the will will exclude such adult adoptees who had no parent-child relationship from sharing in a legacy or bequest to 'children.' E.g. Ketcham,* 343 Pa.Super. 534, 495 A.2d 594 (1985).

352 Pa.Superior Ct. at 8–9, 506 A.2d at 954–55. (Emphasis added). In *Kauffman,* this Court found no affirmative evidence in the record which would establish a parent-child relationship existed. While we could not conclude, as in *Ketcham,* that the sole reason for the adoption was to secure the inheritance, we nonetheless refused to extend the *Tafel* rule of construction to the facts of that case, absent at least some showing that the adoption of the appellant during her majority was done for reasons other than an attempt to share in the inheritance. This Court held in *Kauffman* that "without any showing of a parent-child relationship existing during an adoptee's minority, a person adopted during majority may not be presumptively considered to be a "child" of the adoptive parent when

construing the will of a testator who has died and whose will becomes effective prior to the time of the adult adoption." 352 Pa.Superior Ct. at 10, 506 A.2d at 956.[3]

In the instant case, the trial court found the adoption of appellant at age forty-one was to secure an inheritance for appellant under the trust established by Decedent's father. (Trial Ct.Op. at 3, 8). The trial court based its finding on the fact that Decedent had not adopted appellant until after he had discussed with Darrell Johnson, the trust officer, the possibility of eliminating one of his natural children from the trust and the possibility of an adopted child sharing in the trust. Appellant's adoption occurred *after* Decedent was informed by Mr. Johnson that adopted children can inherit in Pennsylvania with natural children and Decedent could not eliminate one of his children. Thus, the trial court's conclusion that Decedent's motive in adopting appellant was to secure him an inheritance is supported by the record.

The record does not reflect any showing that a parent-child relationship had developed during appellant's minority. Mr. Hollifield, appellant's natural father, died when appellant was twenty years old. (N.T. 10/26/87 at 15). Appellant did not meet Decedent until he was nineteen years old. (N.T. 10/26/87 at 15). Therefore, the inference could be drawn that appellant and Decedent had not developed a

---

3. Indeed, this is the position taken by the legislature in the current section of the Probate, Estates & Fiduciaries Code dealing with adopted children. Specifically, Section 2514 provides in relevant part:

... [I]n construing a will making a devise or bequest to a person or persons described by relationship to the testator or to another, any adopted person shall be considered the child of his adopting parent or parents, *except that, in construing the will of a testator who is not the adopting parent, an adopted person shall not be considered the child of his adopting parent or parents unless the adoption occurred during the child's minority or reflected an earlier parent-child relationship that existed during the child's minority.*

20 Pa.C.S.A. § 2514(7). (Emphasis added). While the current statute does not apply in this case, as was the case in *Kauffman,* it is relevant as to whether the policy of this Commonwealth should be to allow persons adopted during their majority to inherit under the terms of pre-existing wills referring to children, grandchildren, issue and like terms.

parent-child relationship during appellant's minority. A thorough review of the record reveals no more than the development of a friendship based upon common interests during the early years of the adoptee's adult life. Therefore, we hold that the absence of a parent-child relationship during the adoptee's minority and the evidence which suggests that a primary motive for the adoption was to secure an inheritance under an existing will adequately support the trial court's conclusion that appellant was not entitled to inherit from the testator who was not the adopting parent and who died before the adoption. *See Tafel, supra; Kauffman, supra; Ketcham, supra.*

Based upon the foregoing, we conclude that the trial court correctly denied appellant's petition. Accordingly, we affirm the order of the trial court.